# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 02-3058

ANTHONY J. MILITELLO,
*Plaintiff-Appellant*,

v.

CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS
PENSION FUND, and THE BOARD OF TRUSTEES OF THE
CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS
PENSION FUND,

*Defendants-Appellees*.

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 2884—**Elaine E. Bucklo**, *Judge.*

_____

ARGUED JANUARY 24, 2003—DECIDED MARCH 3, 2004

_____

Before RIPPLE, EVANS, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* As a retired truck driver, Anthony J. Militello received pension benefits from the Central States, Southeast and Southwest Areas Pension Fund ("the Fund"). After learning that Militello ran his own trucking company, the Fund's Board of Trustees ("the Trustees") suspended his benefits and sent him a benefits denial letter. Militello sued both the Fund and the Trustees

under the Employee Retirement Income Security Act ("ERISA") for unlawful suspension of benefits. The district court granted defendants' motion for summary judgment and Militello appeals.

We affirm, finding that the district court appropriately applied an "arbitrary and capricious" standard of review, the administrative record and denial letter were satisfactory and Militello received a "full and fair review." We further find that both federal regulations and the plan's language allow for suspension of benefits under these circumstances.

## I. BACKGROUND

Anthony Militello participated in the Central States Southeast and Southwest Areas Pension Fund by virtue of his employment as a truck driver with Alco Express. After working at Alco Express for thirty-one years, he retired on March 24, 1996 at age fifty-three and promptly applied for pension benefits. Militello stated in a letter to the Fund that he owned trucks. A letter from Alco Express also indicated to the Fund that Militello owned trucks and that he did not have any control over the drivers or the equipment. Based on this information, the Fund approved Militello's application and began to pay him benefits on April 1, 1996.

On November 17, 1997, a representative from a local union informed the Fund that Militello owned and operated a trucking business that employed drivers. The Fund sent Militello a letter, indicating that it had received information that he was the "self-employed owner of a trucking company," and requesting his 1996 federal income tax returns and information regarding his day-to-day duties at the company. Militello replied that he had no duties or drivers and that he leased his equipment to American Motor Lines, which hired and paid the drivers. Because he did not

submit a full copy of his tax returns, the Fund once again requested the returns. The Fund received the requested tax documents which revealed that in 1996, Militello listed his business as "Trucking," and spent almost $100,000 in fuel expenses and over $20,000 for a driver bonus. The Fund's Reemployment Committee determined that Militello's ownership of the trucking business constituted prohibited reemployment and gave Militello thirty days to terminate his ownership or face suspension of benefits.

Militello appealed the Reemployment Committee's decision to the Benefits Claim Appeals Committee ("BCAC") which affirmed, stating in part that "[t]he committee made its decision regarding your reemployment because work, in any capacity, requiring the same skills as those used by Fund participants while employed by contributing employers in the same metropolitan area in which you work is considered Prohibited Reemployment."

Militello appealed the BCAC's decision to the Trustees and the Trustees agreed with the earlier decisions, concluding that Militello was engaged in Prohibited Reemployment and that his retirement benefits would be suspended. The Pension Processing Department sent a letter to Militello informing him that he had received overpayment of benefits from April 1996 through August 1998, and that as a result, the $75,400 overpayment would be deducted from future benefits.

Militello brought suit against the Fund and the Trustees under ERISA, 29 U.S.C. § 1001 *et seq.*, for unlawful termination of pension benefits. On cross-motions for summary judgment, the district court entered judgment for the defendants, holding that the appropriate standard of review of the Trustees' decision was "arbitrary and capricious," the Trustees' decision to suspend Militello's benefits was not arbitrary and capricious, and the Fund could recoup the $75,400 in benefits paid. Militello appeals these determinations.

## II.  ANALYSIS

### A.  Standard of Review

Summary judgment is warranted only if there is "no genuine issue as to any material fact." *Fritcher v. Health Care Serv. Corp.*, 301 F.3d 811, 815 (7th Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). We review a grant of summary judgment de novo, viewing all facts and drawing all reasonable inferences in Militello's favor. *Id.*

We must first address whether the district court applied the correct standard of review to the Trustees' decision to suspend benefits. The standard of review depends on the amount of discretion that plan documents afford the plan administrator, in this case the Trustees.[1] *See Johnson v. Allsteel, Inc.*, 259 F.3d 885, 889 (7th Cir. 2001). A denial of benefits will be reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan confers discretionary authority, then a denial of benefits will be reviewed under an arbitrary and capricious standard. *See Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001).

We have designated the following phrase as safe harbor language that clearly gives the plan administrator broad discretionary power and thus ensures deferential review: "Benefits under this plan will be paid only if the plan ad-

---

[1] The defendants assert that the Trustees are plan administrators of the Fund under 29 U.S.C. § 1002(16)(B). They argue in a short footnote that Militello's case against the Trustees should be dismissed because "[t]his court has repeatedly held that ERISA permits suits to recover benefits only against the plan as an entity." The defendants' underdeveloped argument, raised for the first time on appeal, does not convince us that dismissal is warranted.

ministrator decides in his discretion that the applicant is entitled to them." *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir. 2000). While this language ensures deferential review, that precise wording is not required. *See id.* (noting that "the courts have consistently held that there are no 'magic words' determining the scope of judicial review of decisions to deny benefits")*.*

Here, Central States' trust agreement contains numerous references to the Trustees' broad discretion. For instance, Article V § 2 states that "Trustees are vested with discretionary and final authority in making all [plan-related] decisions, including Trustee decisions upon claims for benefits by participants and beneficiaries of the Pension Fund and other claimants, and including Trustee decisions construing plan documents of the Pension Fund," and the plan makes clear that it incorporated the language of the trust agreement. *See* Pension Plan, Article VII § 7.01 ("[T]he Board of Trustees has authority to control and manage jointly the operation and administration of the Pension Fund and of this Pension Plan *in accordance with the terms of the Trust Agreement* and of this Pension Plan and amendments thereof. . . .") (emphasis added). Because the trust agreement's language confers substantially the same discretion as the safe harbor language discussed above, we find it sufficient to trigger the arbitrary and capricious standard of review. In light of this finding, we need not make an independent determination as to whether the language of the plan itself is sufficient to trigger this standard.[2]

---

[2] Citing *Fritcher v. Health Care Service Corp.*, 301 F.3d 811 (7th Cir. 2002) and *Herzberger v. Standard Ins. Co.*, 205 F.3d 327 (7th Cir. 2000), Militello contends that the trust agreement is irrelevant because it is not a plan document under ERISA. Neither case supports Militello's position. In *Fritcher*, we ruled

(continued...)

Under the arbitrary and capricious standard, an adminis-trator's decision will not be overturned if "(1) 'it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome,' (2) the decision 'is based on a rea-sonable explanation of relevant plan documents,' or (3) the administrator 'has based its decision on a consideration of the relevant factors that encompass important aspects of the problem.' " *Hess*, 274 F.3d at 461 (quoting *Exbom v. Central States, S.E. & S.W. Areas Health & Welfare Fund*, 900 F.2d 1138, 1142-43 (7th Cir. 1990)); *see also Trombetta v. Cragin Fed. Bank for Sav. Employee Stock Ownership Plan*, 102 F.3d 1435, 1438 (7th Cir. 1996) ("Absent special circumstances such as fraud or bad faith, the Committee's decision may not be deemed arbitrary and capricious so long as it is possible to offer a reasoned explanation, based on the evidence, for that decision."). Additionally, because the standard of review is deferential, we "consider only the evidence that was before the administrator when it made its decision." *Hess*, 274 F.3d at 462; *see Perlman v. Swiss*

---

(...continued)

only that language in a "Benefit Booklet" did not compel deferen-tial review, and that the "Administrative Services Agreement" at issue was not a "plan document" for purposes of divining the appropriate standard of review. *See* 301 F.3d at 816-17. In *Herzberger*, we said only that "employees are entitled to know what they are getting into" with respect to the standard of review. *See* 205 F.3d at 333. We note that trust agreements are mentioned in 29 U.S.C. § 1024(a)(6), (b)(2) & (b)(4), in conjunction with other items that are clearly plan documents. Morever, both this circuit and others have traditionally reviewed cases involving Central States' pension plan and its sister fund, the health and welfare plan, under the arbitrary and capricious standard. *See, e.g.*, *Whisman v. Robbins*, 55 F.3d 1140, 1144 (6th Cir. 1995); *Exbom v. Central States, S.E. & S.W. Areas Health & Welfare Fund*, 900 F.2d 1138, 1142-43 (7th Cir. 1990). Militello has not provided us with a compelling reason to deviate from these cases.

*Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 981-82 (7th Cir. 1999).

## B.  The Trustees' Decision

### 1.  The Administrative Record

The administrative record upon which the Trustees' decision was based is a major bone of contention between the parties. The tension is due in part to an affidavit submitted by Albert E. Nelson, Benefits Director for the Fund, in support of the summary judgment motion of the Fund and the Trustees, indicating that the Trustees' June 10, 1998 meeting minutes contain both an "agenda portion (consecutively bates stamped CS0001-04) and an attachments portion (consecutively bates stamped CS0005-75)." (Nelson Aff. of Jan. 31, 2002 ¶ 26.) According to Nelson, the attachments include the correspondence between the Fund and Militello, Militello's 1996 federal tax returns, and lease agreements between Militello and American Motor Lines. Militello argues that the administrative record should be limited to the agenda portion of the minutes, because the minutes make no reference to the attachments. He views Nelson's affidavit as an impermissible augmentation of the administrative record, and further contends that because Nelson is the Benefits Director and not a Trustee, Nelson is not qualified to testify about the record's contents.

Under the terms of the trust agreement, the Trustees are required to "make and maintain a record of the actions of the Trustees taken at any meeting thereof." (Article VI, § 3, CS 0231.) Nevertheless, we see no reason why Nelson, as Benefits Director for the Fund and a regular attendee of the Trustees' meetings, would not be qualified to testify to the contents of the administrative record and the nature of the Trustees' discussion. He has performed this function adequately in the past, *see Whisman v. Robbins*, 810 F.

Supp. 936, 941 (S.D. Ohio 1992), *rev'd on other grounds*, 55 F.3d 1140 (6th Cir. 1995), and is specifically referenced in the minutes.[3]

Moreover, the minutes suggest that the administrative record consisted of both an agenda section and an attachment section. The agenda section specifically acknowledges receipt of several documents in the "background" section, including Militello's tax returns and truck leases.[4] Additionally, the "action" portion of the agenda references a letter "to Mr. Militello from William J. Schaefer dated April 7, 1998 (attached page 28)."[5] In any event, Militello cannot have it both ways: although he complains that the attachments cannot be considered part of the record, he cites to certain attachments (namely, the leases) to bolster his claim that he was not running a trucking business. Therefore, we find no error in the district court's determination that the administrative record on appeal consists of both the agenda section and the attachments.[6]

---

[3] "After a full discussion, a motion was made, seconded and unanimously carried, upon recommendation of Albert E. Nelson and Staff, to determine that the above-described employment of Anthony J. Militello by Anthony J. Militello Trucking is Prohibited Reemployment and that his retirement pension payments are to be suspended."

[4] In his reply brief, Militello argues for the first time on appeal that the Fund deleted letters that he submitted from the administrative record. We deem this argument waived. *See United States v. Feinberg*, 89 F.3d 333, 340-41 (7th Cir. 1996).

[5] Militello is quick to point out that the letter is not actually attached at page 28. However, as the letter is the twenty-seventh document following the minutes, we consider this to be a discrepancy of no consequence.

[6] Militello claims that based on *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 694 (7th Cir. 1992), the Trustees were required to "identif[y] each item considered . . . and include[ ] the Commit-

(continued...)

After reviewing the entire record, it is clear that the Trustees' decision to suspend benefits cannot be characterized as arbitrary and capricious. Militello listed his business as "Trucking" on his tax returns and also described fuel expenses totaling nearly $100,000 and a driver bonus exceeding $20,000. Based on this information (which was consistent with the union representative's statement that Militello was running a trucking business that employed drivers), it was not unreasonable for the Trustees to determine that Militello was doing more than leasing.

Relying on the leases, Militello argues that he could not be running a trucking business. The leases state that the lessees shall "exercise the degree of control" required by the Department of Transportation ("DOT"). According to the DOT, lessees "shall have exclusive possession, control, and use of the equipment for the duration of the lease," and "shall assume complete responsibility for the operation of the equipment for the duration of the lease." 49 C.F.R. § 376.12(c)(1). However, in his briefs, Militello did not even attempt to explain how this language squares with his tax returns.[7]

---

(...continued)

tee's assessment of that item and the weight given to it." This is not the rule set forth in *Halpin.* In that case, we merely explained that in *Brown v. Retirement Committee of Briggs & Stratton Retirement Plan*, 797 F.2d 521, 535-36 (7th Cir. 1986), we determined that a denial letter alone did not comply with the statute. However, in *Briggs*, because the minutes of the meeting were attached to the letter, and because the minutes "identified each item considered" and "included the Committee's assessment of that item," the combination of the letter and the minutes revealed substantial compliance with 29 U.S.C. § 1133. *See Halpin*, 962 F.2d at 694. Moreover, we specifically noted in *Halpin* that "substantial compliance" with ERISA's regulations is all that is required. *Id.*

[7] Only at oral argument did Militello attempt to reconcile the DOT language with his 1996 tax returns by contending that

(continued...)

### 2. **Plain Language**

Next, Militello insists that the Trustees' decision to suspend benefits is contrary to the plain language of the pension plan. Specifically, he alleges that nothing in the plan suggests that benefits can be suspended based on ownership of trucks.

We begin by examining the plan's language. The plan states that absent special circumstances not relevant here, a "Pensioner shall have his benefit payments suspended for any calendar month in which he works in 'Prohibited Reemployment.'" (Pension Plan § 4.13(a)). Prohibited Reemployment is defined as

> [e]mployment in any position, including a managerial or supervisory position and including self-employment, but not including government employment, either in the same industry in which the Participant or Pensioner earned any Contributory Service Credit while covered by the Pension Fund, or in any other industry if the Participant or Pensioner is in the same job classification as are other Participants then employed by a Contributing Employer located within the same standard metropolitan statistical area.

(Pension Plan § 4.13(f)(3)).

Based on this language, we agree with Militello that nothing in the plan allows the Trustees to bar him from owning trucks if he wants to keep his pension. However,

---

(...continued)
his leases are "wet" leases as opposed to "dry," and that under the terms of a "wet" lease, the lessor pays fuel expenses and bonuses. Unfortunately for Militello, he has not pointed us to any language in the leases (or any other authority, for that matter) explaining the difference between "wet" and "dry," and his argument comes too late.

Militello's benefits were not suspended merely because he owned trucks; indeed, the Fund was told that he owned and leased trucks when it initially approved his request for benefits. Militello's funds were suspended because the Fund determined that he owned and operated a trucking business employing drivers. It was not contrary to the plan's plain language for the Trustees to determine that owning a trucking business that employed drivers violated the plan's prohibition against managing employees, supervising employees, or engaging in self-employment in the trucking industry.

### 3. The Denial Letter

Militello also has numerous procedural complaints. For instance, he alleges that the benefits denial letter issued by the Trustees does not satisfy statutory and regulatory requirements. ERISA dictates that specific reasons for denial be communicated to the claimant. *See* 29 U.S.C. § 1133(1) ("[E]very employee benefit plan shall—(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim. . . ."); 29 C.F.R. § 2560.503-1(g)(1).[8]

---

[8]  According to the regulation, "[t]he notification shall set forth, in a matter calculated to be understood by the claimant—(i) The specific reason or reasons for the adverse determination; (ii) Reference to the specific plan provisions on which the determination is based; (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; (iv)
(continued...)

"Although the applicable regulations are specific in pronouncing the requirements, strict compliance is not mandated. . . . Rather, substantial compliance with the regulations is sufficient. . . ." *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 180 (7th Cir. 1994) (citations omitted).

In this case, the Trustees' denial letter stated that Militello was not eligible "to receive pension benefits for any period that [he is] the owner of Anthony Militello Trucking," and that the Trustees made this decision because "work, in any capacity, requiring the same skills as those used by Fund participants while employed by contributing employers in the same metropolitan area in which you work is considered Prohibited Reemployment." The letter also indicated that in order to avoid the suspension of benefits, Militello must "provide documentation verifying that [he] no longer ha[d] any ownership in the Anthony Militello Trucking Company" in the next thirty days. (Compl. Ex. B-1.) Furthermore, it cited the specific plan provision Militello had allegedly violated.

The district court properly determined that this letter satisfied statutory and regulatory requirements. The letter indicated, "in a manner calculated to be understood by the participant," that the Trustees found Militello ineligible for pension benefits because his actions as owner of Anthony Militello Trucking constituted prohibited reemployment. Although the letter is sparse, the Trustees were required to give only specific reasons, not "the reasoning behind the reasons." *Gallo v. Amoco Corp.*, 102 F.3d 918, 923 (7th Cir. 1996) ("All [the plan administrator] has to give the applicant is the reason for the denial of benefits; he does not have to explain to him why it is a *good* reason. To require that would turn plan administrators not just into arbi-

---

(...continued)

A description of the plan's review procedures and the time limits applicable to such procedures . . . ."

trators, for arbitrators are not usually required to justify their decisions, but into judges, who are.") (emphasis in original).

### 4. Full and Fair Review

Militello argues that his claim was not afforded a "full and fair review" for three reasons: (1) he was denied a step in the appeal process articulated in the plan; (2) the Trustees applied a non-uniform interpretation of the plan in rejecting Militello's claim; and (3) the Trustees failed to adequately explain their decision.

With respect to Militello's first contention, we agree that the Fund did not follow the plan's provisions to the letter. The plan outlines a three-step appeal procedure for the review of any claim that has been denied: (1) review by the Benefits Claim Review Committee (the "Review Committee"), (2) review by the BCAC, and (3) review by the Board of Trustees. Militello's case took a different route. The Reemployment Committee, which is not mentioned in the plan, initially decided to suspend Militello's pension benefits. Militello was then allowed to appeal to the BCAC, and finally to the Trustees. Thus, Militello was only allowed two appeals.[9]

We are troubled by the Fund's inability to follow its own rules. Nevertheless, we have stated that

> [t]he persistent core requirements of review in-
> tended to be full and fair include knowing what

---

[9] The Fund defends this procedural irregularity on the ground that the Reemployment Committee "is more qualified than Central States' Staff or the [Review Committee] to handle Prohibited Reemployment claims. For all practical purposes, the Reemployment Committee is the functional equivalent of the [Review Committee]." Appellees' Br. at 25 (citations omitted).

evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision.

*Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 689 (7th Cir. 1992) (quoting *Brown v. Ret. Comm. of Briggs & Stratton Ret. Plan*, 797 F.2d 521, 534 (7th Cir. 1986)). Militello does not complain (at least not in his initial brief[10]) that the failure of the Fund to follow its appeal procedures deprived him of any of these "core requirements." Thus, we cannot say that failure to follow the appeal process to the letter, without more, necessarily deprived Militello of full and fair review. *Cf. Buttram v. Central States, S.E. & S.W. Areas Health and Welfare Fund*, 76 F.3d 896, 901 (8th Cir. 1996) ("Although the procedural irregularities in this case [which included failure to provide written notice of claim denial, the absence of a second-level appeal, and a seven year gap between application of benefits and a third-level appeal] give us pause, they do not demonstrate that the actual decision reached . . . was arbitrary or whimsical.").

We next address Militello's assertion that the Trustees applied a non-uniform interpretation of the plan. To buttress this claim, he points to his submission of a letter to the Fund stating the following: "The letter being written requesting approval of My retirement after 31 years of service, with the right to retain My equipment. This request being previously approved is now being denied." Militello's argument is not compelling. All that is alleged in these two statements is that Militello was aware that the Fund was

---

[10] We note that Militello has again raised new arguments in his reply brief. To the extent that Militello's arguments were not set forth in his initial brief, we will not address them here. *See Feinberg*, 89 F.3d at 340-41.

taking action to suspend his pension benefits; the letter does not show that the Trustees applied a non-uniform interpretation to Militello as opposed to other claimants. Rather, the record suggests that the Fund's understanding of Militello's situation had changed; the Fund believed that he was operating a trucking business rather than simply owning and leasing trucks. Based on these changed circumstances, the Fund was entitled to take action, including reversal of an earlier decision to grant benefits. Put simply, a reversal based on new information is not a non-uniform interpretation.[11]

We finally turn to Militello's contention that the Trustees failed to explain their reasons for suspension, thus denying him the opportunity to challenge the decision adequately. Specifically, he claims that the Trustees never explained what "skill" he was using that violated the plan's reemployment rules. As we stated earlier, we find that the Trustees alerted Militello to the fact that they believed his ownership of a trucking business violated the plan. Militello was thus equipped to challenge their decision.[12]

---

[11] Militello contends that the Fund was required to demonstrate uniformity by pulling similar cases from its files. While such thoroughness on the Fund's part would certainly have been appreciated, Militello cites no persuasive authority for this proposition. 29 C.F.R. § 2560.503-1(b)(5), the regulation upon which Militello relies, does not impose a blanket requirement for pension funds to provide data on all related cases every time it denies benefits.

[12] Militello contends that Nelson's affidavit offers a *post hoc* rationalization of the Trustees' decision. Nelson's affidavit gives more of the "reasoning behind the reasons," intimating that the Trustees arrived at their decision largely based upon Militello listing "Trucking" as his type of business on his tax returns, and the payment of fuel expenses and a driver bonus. However, this additional explanation is permissible under *Gallo* because Nelson does not introduce new facts and his explanation is consistent

(continued...)

### 5. 29 U.S.C. § 2530.203-3

Militello argues that 29 C.F.R. § 2530.203-3 precludes the Fund from suspending pension benefits due to self-employment. He fails to consider part (a) of the regulation which specifically excludes claimants who have not attained normal retirement age from its protection:

> A plan may provide for the suspension of pension benefits which commence *prior to the attainment of normal retirement age*, or for the suspension of that portion of pension benefits which exceeds the normal retirement benefit, or both, for *any re-employment and without regard to the provisions of section 203(a)(3)(B) and this regulation* to the extent (but only to the extent) that suspension of such benefits does not affect a retiree's entitlement to normal retirement benefits payable after attainment of normal retirement age, or the actuarial equivalent thereof.

29 C.F.R. § 2530.203-3(a) (emphasis added); *see also Whisman*, 55 F.3d at 1146-47.

Militello retired at age fifty-three; now sixty-one years old, he has still not attained the normal retirement age, which is defined as sixty-five in the plan. Therefore, this regulation does not pertain to Militello, and we easily dispose of his claim.[13]

---

(...continued)

with the Trustees' decision. *See Gallo*, 102 F.3d at 923 ("When challenged in court, the plan administrator can defend his interpretation with any arguments that bear upon its rationality," although he is prohibited from "augment[ing] the administrative record with new facts bearing upon the application for benefits. . . .").

[13] Finally, Militello argues that the Fund is not entitled to recoupment of benefits already paid because he "was never provided with an opportunity to appeal the decision to seek recoup-

(continued...)

### III.  CONCLUSION

For the foregoing reasons, the district court's decision is AFFIRMED.


A true Copy:

      Teste:


_____

*Clerk of the United States Court of
Appeals for the Seventh Circuit*

---

(...continued)

ment, an issue which was not addressed in the administrative process." Not only did the district court consider this argument waived, but on appeal, Militello does not cite to the record, a case, a statute, or a regulation in his two-sentence argument in his initial brief. Not surprisingly, we consider his claim waived as well. *See Tyler v. Runyon*, 70 F.3d 458, 465 (7th Cir. 1995).

---