Angela REKOWSKI, Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY, Defendant.

No. 05–C–452–C.

United States District Court, W.D. Wisconsin.

March 3, 2006.

**1042**

Adam A. Bardosy, for Plaintiff.

Joseph P. Wright, Stafford Rosenbaum, LLP, Madison, WI, for Defendant.

## OPINION and ORDER

CRABB, District Judge.

On April 15, 2004, Steven Rekowski's body was discovered inside his truck, in a lake in Holcombe, Wisconsin. Investigators determined that he had drowned. His widow, plaintiff Angela Rekowski, filed an application for benefits under an insurance plan sponsored by her employer. The plan's fiduciary, defendant Metropolitan Life Insurance Company, paid her benefits under a basic life insurance policy but denied her request for accidental death benefits. Plaintiff filed an action to recover the accidental death benefits in the Circuit Court for Marathon County. Defendant removed the action to this court, asserting federal jurisdiction on the ground that the insurance plan is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461. Subject matter jurisdiction is present under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

This case is presently before the court on cross motions for summary judgment. For the reasons stated below, I will grant defendant's motion and deny plaintiff's motion. Defendant is entitled to summary judgment because it did not act arbitrarily and capriciously by invoking the plan's exclusion for intoxication as a basis for denying plaintiff's claim. In light of this conclusion, I will not address the three other grounds on which defendant denied plaintiff's claim. Without question, plaintiff has experienced a terrible loss. Although my sympathies lie with her, the facts in this case are not on her side.

From the parties' proposed findings of fact, I find the following to be material and undisputed.

## UNDISPUTED FACTS

### A. *Parties*

Plaintiff Angela Rekowski is an adult resident of Wittenberg, Wisconsin. She married Steven Rekowski on September 30, 2000 and remained married to him until his death in April 2004. Plaintiff is employed by Pfizer, Inc. Pfizer sponsored life insurance and accidental death and dismemberment insurance plans (the plan) for eligible employees and their dependents. Plaintiff participated in the plan and enrolled her husband for basic life and accidental death and dismemberment benefits. Plaintiff was designated the beneficiary for Steven Rekowski's life and accidental death and dismemberment benefits on the most recent designation.

Defendant Metropolitan Life Insurance Company is a New York corporation engaged in the business of providing accidental death and dismemberment benefits to Wisconsin corporations and their employees, among others. Defendant issued Group Policy number 11351–G–1 to Pfizer and serves as the claim fiduciary for Pfizer's plans.

### B. *Relevant Plan Provisions*

Pfizer's plan provides that life benefits equal to an employee's annual salary are payable upon his death or the death of

another insured. In this case, the amount payable for life benefits under the plan in the event of Steven Rekowski's death was $62,000. The plan provides that accidental death and dismemberment benefits are payable in the amount of three times the employee's annual salary in the event of an accidental death that meets the terms and conditions of the plan. In this case, the amount payable as accidental death and dismemberment benefits was $186,000.

The plan's provision concerning eligibility for accidental death and dismemberment benefits provides in relevant part as follows:

> If You sustain an accidental injury that is the Direct and Sole Cause of a Covered Loss described in the Schedule of Benefits, Proof of the accidental injury and Covered Loss must be sent to Us. When We receive such Proof We will review the claim and, if We approve it, will pay the insurance in effect on the date of the injury.
>
> **Direct and Sole Cause** means that the Covered Loss occurs within 12 months of the date of the accidental injury and was a direct result of the accidental injury, independent of other causes.
>
> We will deem a loss to be the direct result of an accidental injury if it results from unavoidable exposure to the elements and such exposure was a direct result of the accident.

Death is a "covered loss" under the terms of the plan. The plan contains the following exclusions for accidental death and dismemberment benefits:

> We will not pay benefits under this section for any loss caused or contributed to by: ...
>
> 4. intentionally self-inflicted injury;
> ....
> 7. the voluntary intake or use by any means of: any drug, medication or sedative; ... alcohol in combination with

any drug, medication, or sedative; or poison, gas, or fumes.
> Exclusion for Intoxication
> We will not pay benefits under this section for any loss if the injured party is intoxicated at the time of the incident and is the operator of a vehicle or other device involved in the incident.
>
> **Intoxicated** means, that the injured person's blood alcohol level met or exceeded the level that creates a legal presumption of intoxication under the laws of the jurisdiction in which the incident occurred.

The plan does not define the terms "operator" and "incident." Finally, the plan gives defendant discretionary authority to interpret its terms and determine eligibility for benefits. It provides that

> ... the Plan administrator and other Plan fiduciaries, including Metropolitan, shall have discretionary authority to interpret the terms of the Plan and determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

### C. Events Surrounding Steven Rekowski's Death

On April 13, 2004, Steven Rekowski and Gary Knuth were working in Sheldon, Wisconsin. At the end of their work day, the two men drove in a pickup truck to Holcombe, Wisconsin, where they planned to meet another co-worker, Mike Dombrowski, at the Big Minnow Tavern and stay overnight at the Paradise Shores Resort. Rekowski and Knuth arrived at the Big Minnow between 5:00 and 5:30 p.m. Rekowski consumed alcohol and food at the tavern; he and Knuth stayed at the

tavern late into the night before leaving for the resort. When they arrived at the resort, Knuth checked in while Rekowski was to park the truck. Knuth finished checking in at about 11:53 p.m. and went outside to find Rekowski. Seeing no sign of Rekowski or the truck, Knuth went back to the resort and told the clerk to tell Rekowski that he had gone to room 208.

Knuth woke up the next morning around 6:00 a.m. and discovered that Rekowski had not stayed in the room. He checked the parking lot but found no sign of Rekowski or the truck. Efforts to locate Rekowski that day were unsuccessful. The next day, April 15, a search party was assembled. Around noon, two searchers discovered a metal object just off the shore in Lake Holcombe, in approximately 30 to 40 feet of water, and near a boat landing next to the Paradise Shore's parking lot. A dive team confirmed that the object was Rekowski's truck and that a man was inside the passenger compartment. After the truck was removed from the water, a member of the search team identified the man inside as Steven Rekowski. He was pronounced dead at 5:30 p.m. that day.

### D. *Investigation of Rekowski's Death*

The only damage to the truck was the top center, with damage to the windshield and the top in that location. Both side windows were intact. The truck's transmission was in Park and the keys were on the driver's side floor near the gas pedal. There were no obstructions on the brake or gas pedal and the doors on each side of the truck were closed and unlocked.

Officer Arnold Pahlke completed a Wisconsin Motor Vehicle Accident Report concerning the incident. It was his opinion that Rekowski drove his truck northbound on 263rd street (which ends at the boat landing on Lake Holcombe) while under the influence of an intoxicant, failed to notice the boat landing and drove his truck into the water, where it sank. According

to the report, there were no eyewitnesses to Rekowski's drowning. The Chippewa County Coroner thought that Rekowski drove the truck into the lake, put it in park, took the keys out of the ignition and went to sleep. The coroner's Death Report states that Rekowski died from drowning and acute alcoholic intoxication. The autopsy report prepared by Dr. Kelly Mills, an assistant medical examiner with the Ramsey County Office of the Medical Examiner, does not contain any evidence suggesting that Rekowski's body had any signs of physical impact with the water. A toxicology report prepared by the Ramsey County Office of the Medical Examiner reveals that, at the time of his death, Rekowski's ethanol blood level was .257gm/dl, which exceeds the legal limit in Wisconsin. Another toxicology report prepared by the Wisconsin State Laboratory of Hygiene lists Rekowski's ethanol blood level at .240g/100ml at the time of his death, which also exceeds the legal limit in Wisconsin. The Department of Health and Family Services issued a death certificate, listing freshwater drowning and acute alcohol intoxication as the final conditions resulting in Rekowski's death. It notes that Rekowski drove the truck into the lake and drowned when the truck sank.

### E. *Denial of Plaintiff's Accidental Death Benefits Application*

Following her husband's death, plaintiff submitted a claim to defendant for basic life and accidental death benefits. Defendant approved her claim for basic life benefits and paid her the sum of $62,000 plus interest. However, after conducting an investigation, defendant denied plaintiff's claim for accidental death benefits. At the time defendant made its decision, its file contained the following relevant documents: a voluntary statement, investigative report and supplemental investigative report from the Chippewa County Sheriff's

Department; a Wisconsin Motor Vehicle Accident Report; the Coroner's Report of Motor Vehicle Death; the Chippewa County Coroner Death Report; the toxicology reports prepared by the Ramsey County Office of the Medical Examiner and the Wisconsin State Laboratory of Hygiene; and Rekowski's death certificate.

Defendant informed plaintiff of its decision to deny her accidental death benefits in a letter dated August 30, 2004. The letter provides in relevant part as follows:

> It does not appear that the loss occurred as a direct result of accidental bodily injuries independent of other causes. According to the death certificate, Mr. Rekowski died on April 15, 2004, of "Drowning/Freshwater and Acute Alcohol Intoxication" which occurred as a consequence that "Mr. Rekowski drove his pickup into the lake and the pickup sank and he drowned." The Toxicology report further indicates Mr. Rekowski's Blood Ethanol Level was 0.257 gm/dl. The Wisconsin Motor Vehicle Accident Report states "Mr. Rekowski appears to have driven his pickup truck on 263rd Street, did not notice the boat landing, and that the road ends turning into Lake Holcombe/Chippewa River, he drove his pickup truck into the water where it was immersed in approximately 35–40 feet of water. Mr. Rekowski was under the influence of an intoxicant." In Wisconsin, a driver is considered legally intoxicated and incapable of operating a motor vehicle if the blood alcohol level is at a level of .08 or higher. This is because alcohol impairs the drinker's judgment and physical and mental reaction. As serious injury or death is the reasonably foreseeable consequence of voluntarily attempting to drive while so impaired, it is not accidental as contemplated by the plan. Additionally, benefits under the plan are not payable as the mental and physical impairments caused by his voluntary consumption of alcohol constitute intentionally self-inflicted injuries that caused the death.

The letter informed plaintiff of her right to appeal defendant's decision. On October 28, 2004, defendant received a letter from plaintiff's lawyer appealing defendant's denial of her claim for accidental death benefits. Defendant upheld its decision to deny plaintiff accidental death benefits in a letter dated February 15, 2005. The relevant portion of that letter provides as follows:

> You subsequently appealed MetLife's decision on behalf of your client. You included exhibits to your letter, which were both documents that had previously been obtained and reviewed by MetLife. You did cite to one state law case regarding the operation of a motor vehicle. This claim is governed by ERISA, which is a federal law that preempts state law. *See e.g., Cozzie v. Metropolitan Life Insurance Co.,* 140 F.3d 1104 (7th Cir.1998).

> Your letter of appeal incorrectly states that MetLife asserted only two reasons in support of the decision to deny your client's claim. Your letter addressed both of the relevant exclusions in the Plan but did not address the fact that MetLife also denied your client's claim on the basis that decedent's death was not the direct result of accidental bodily injuries independent of other causes. Several courts have held that deaths like this one did not result solely due to an accident where the decedent's voluntary consumption of alcohol was at least a partial cause of a fatality resulting from the use of a vehicle. *See Smith v. Life Insurance Co. of America,* 872 F.Supp. 482 (W.D.Tenn.1994); *Poeppel v. Hartford Life Ins. Co.,* 273 F.Supp.2d 714 (D.S.C.2003) *aff'd* 87 Fed.Appx. 885 (4th Cir.2004). You did not provide any information or cite to any evidence in the

record disputing the conclusion on the death certificate that decedent's drowning was due to or caused by decedent's acute alcohol intoxication.

Your letter also did not address the fact that MetLife denied your client's claim on the basis that decedent's death was not an accident as contemplated by the Plan. Under federal common law, it is reasonable for an ERISA-regulated claim fiduciary to find the term "accident" in the plan means that a reasonable person, with background and characteristics similar to the plan participant, would have viewed the injury as highly unlikely to occur as a result of his or her intentional conduct. *See Wickman v. Northwestern National Ins. Co.,* 908 F.2d 1077 (1st Cir.1990); *Cozzie,* 140 F.3d 1104 (7th Cir.1998). Decedent's blood alcohol level was .257 which is over three times the legal limit under Wisconsin law. The dangers of attempting to operate a vehicle when one's faculties are so significantly impaired by alcohol are sufficiently well known such that serious injury or death from such a dangerous course of action is reasonably foreseeable and, thus, not "accidental" under the terms of the Plan. . . .

Your letter states that the record does not contain "any shred of evidence" indicating that decedent's death was the result of a self-inflicted injury. A[sic] set forth above, there is evidence that his death was caused or contributed to by the mental and physical impairments resulting from the decedent's voluntary consumption of a large quantity of alcohol. . . .

Finally, you assert that it is inappropriate for MetLife to rely upon the intoxication exclusion because there is no evidence that the vehicle was "operating" at the time decedent's death occurred. You cite to the fact that the Chippewa County Sheriff's Department's Supplementary Investigation Report stated that when the vehicle was removed from the water, the transmission was in park and the vehicle keys were removed from the ignition and on the floor of the driver's side.

Contrary to your assertion, the language of the exclusion does not require that the vehicle be in operation at the time of the loss. The exclusion states that benefits will not be paid for any loss if the injured party is intoxicated at the time of the incident and is the operator of the vehicle or other device involved in the incident. The "incident" was the decedent driving into the lake, the result of which decedent drowned. You do not dispute that he was intoxicated at the time or that he was the operator of the vehicle when it entered the lake. The fact that the keys may have been removed from the ignition and the vehicle was placed in park once the vehicle entered the lake does not change the applicability of this exclusion.

Accordingly, we must uphold the denial of your client's claim.

## OPINION

### A. *Standard of Review*

The Employee Retirement Income Security Act applies to "any plan, fund or program which was heretofore and hereinafter established or maintained by an employer or employer organization or both." 29 U.S.C. § 1002(1). The parties agree that Pfizer's plan is governed by ERISA. The denial of benefits under an employee benefit plan governed by ERISA may be challenged pursuant to 29 U.S.C. § 1132(a)(1)(B).

▮ The parties agree that the standard of review in this case is the deferential "arbitrary and capricious" standard

because the plan gives defendant discretionary authority to determine eligibility for benefits and to construe the terms of the plan. *Firestone Tire and Rubber v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Militello v. Central States, Southeast & Southwest Areas Pension Fund,* 360 F.3d 681, 685 (7th Cir. 2004); *O'Reilly v. Hartford Life & Accident Ins. Co.,* 272 F.3d 955 (7th Cir.2001). Under this standard, the Court of Appeals for the Seventh Circuit limits the scope of review to the record available to the plan administrator at the time the decision was made. *Hess v. Hartford Life & Accident Ins. Co.,* 274 F.3d 456, 462 (7th Cir.2001); *Donato v. Metropolitan Life Ins. Co.,* 19 F.3d 375, 380 (7th Cir.1994); *Smart v. State Farm Ins. Co.,* 868 F.2d 929, 936 (7th Cir.1989). Deferential review is accorded to the plan administrator's interpretation of the plan's terms and its factual findings. *Paramore v. Delta Air Lines, Inc.,* 129 F.3d 1446, 1450–51 (11th Cir. 1997). A decision may not be set aside as arbitrary and capricious if it is "based on any reasonable interpretation of the plan." *Hess v. Reg–Ellen Machine Tool Corp.,* 423 F.3d 653, 658 (7th Cir.2005). The court's responsibility is to determine whether a plan decision maker's interpretation of a plan is a reasonable one, not whether it is the correct one or the interpretation the court would have given it on its own. James F. Jorden et al., *Handbook on ERISA Litigation* § 4.04[C][5][a] (2d ed.2005).

 To warrant reversal, an administrator's decision must be "downright unreasonable." *Ruiz v. Continental Casualty Co.,* 400 F.3d 986, 991 (7th Cir.2005) (citations omitted). A decision is arbitrary or capricious when the decision maker "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence

... or is so implausible that it could not be ascribed to difference in view or the product of ... expertise." *Pokratz v. Jones Dairy Farm,* 771 F.2d 206, 209 (7th Cir. 1985) (citing *Motor Vehicle Manufacturers' Ass'n v. State Farm Mutual Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). Under this standard of review, a court should consider the following factors: "the impartiality of the decision making body, the complexity of the issues, the process afforded the parties, the extent to which the decision makers utilized the assistance of experts where necessary, and finally the soundness of the fiduciary's ratiocination." *Chalmers v. Quaker Oats Co.,* 61 F.3d 1340, 1344 (7th Cir.1995). In this case, plaintiff challenges defendant's reasoning only.

### B. *Reasons for Benefits Denial*

The parties agree that defendant denied plaintiff's application for accidental death benefits on four grounds. First, defendant concluded that Rekowski's death was not an accident because it was a reasonably foreseeable consequence of driving while intoxicated. Second, it concluded that Rekowski's death was not the direct result of accidental bodily injuries independent of other causes. Third, defendant determined that Rekowski's death fell within the plan's exclusion for "intentionally self-inflicted" injuries. Finally, defendant determined that defendant's death fell within the plan's exclusion for losses that occur while the injured party is intoxicated and operating a vehicle or other device involved in the incident. Plaintiff contends that each of these conclusions was arbitrary and capricious.

In considering challenges to an administrator's conclusions, courts must focus on the language of the plan and determine whether the administrator has interpreted the language reasonably and applied it

reasonably to the evidence in the case. *Cozzie v. Metropolitan Life Ins. Co.*, 140 F.3d 1104, 1109 (7th Cir.1998).

## C. *Intoxication Exclusion*

Pfizer's plan contains an exclusion for losses suffered "if the injured party is intoxicated at the time of the incident and is the operator of a vehicle or other device involved in the incident." By its terms, two conditions are necessary to invoke this exclusion: the injured party must be legally intoxicated at the time of the injury and he must be the operator of a vehicle involved in the incident. There is no dispute that the first condition has been satisfied. The parties agree that Rekowski's blood alcohol level at the time of his death was above the limit that creates a legal presumption of intoxication in Wisconsin. Two toxicology reports put Rekowski's blood alcohol level at .240 and .257 at the time of his death. Wisconsin presumes an individual to be legally intoxicated when his blood alcohol level reaches .08. Wis. Stat. §§ 346.63(1)(b), 340.01(46m)(a).

The parties' disagreement about the applicability of the intoxication exclusion focuses on the second condition, whether Rekowski was the operator of a vehicle involved in the incident. After reviewing the documents generated in connection with the investigation of Rekowski's death, defendant determined that the circumstances surrounding the discovery of Rekowski's truck satisfied the second condition. In its February 15, 2005 letter, defendant wrote that the "incident" in this case was Rekowski's driving his truck into the lake. Also, defendant concluded that Rekowski was "the operator of a vehicle ... involved in the incident" because the only theory suggested by the documents to explain how the truck became submerged at the bottom of the lake was that Rekowski drove the truck into the lake and it sank.

■ Plaintiff notes correctly that defendant bears the burden of proving that it correctly denied a claim for benefits on the basis of a policy exclusion. *Jenkins v. Montgomery Industries, Inc.*, 77 F.3d 740, 743 (4th Cir.1996) ("A basic rule of insurance law provides that the insured must prove that a covered loss has occurred, while the insurer carries the burden of demonstrating that a loss falls within an exclusionary clause of the policy."); *McGee v. Equicor–Equitable HCA Corp.*, 953 F.2d 1192, 1205 (10th Cir.1992) (citing cases); *Cleary v. Knapp Shoes, Inc.*, 924 F.Supp. 309, 315–16 (D.Mass.1996). However, because defendant had discretion to interpret the terms of the plan, the only question this court must decide is whether defendant's interpretation of the plan and application to the facts before it were reasonable.

■ Plaintiff highlights two terms in the exclusion that are not defined in the plan, "incident" and "operator." Although not stated explicitly in either of its letters to plaintiff, it is apparent that defendant interpreted the word "incident" in the exclusion to refer to the event that results in the injury (in this case death) for which benefits are sought. This is a reasonable interpretation. It is not inconsistent with the rest of the language of the exclusion; in fact, it is fully consistent with that language. It is also consistent with the goal of the exclusion, which is to deny benefits for injuries sustained by insured parties who are injured while operating a vehicle under the influence of alcohol.

■ Plaintiff argues that defendant should have interpreted "incident" to refer to Rekowski's death, not to the event that precipitated his death. However, it is undisputed that death is a "Covered Loss" under the terms of the plan. The word "loss" is used to refer to the injury or death for which benefits are sought. The

phrase "any loss" appears in the intoxication exclusion and a more sensible reading of the exclusion results if that phrase is interpreted to mean Rekowski's death. Under this interpretation, the first paragraph of the exclusion reads as follows:

We will not pay benefits under this section for [Rekowski's death] if [Rekowski] is intoxicated at the time of the [event that results in Rekowski's death] and is the operator of a vehicle or other device involved in the [event that results in Rekowski's death].

As is evident, defendant's construction of "incident" produces a straightforward, coherent reading of the exclusion that gives full effect to its purpose. It is difficult to think of any other way the term could be interpreted. Even if I agreed that plaintiff's interpretation was a reasonable alternative, defendant had the discretion to choose between reasonable alternatives in interpreting the terms of the plan. If a plan administrator's interpretation is reasonable, the fact that plaintiff argues for an equally reasonable interpretation is not a valid ground for overturning the administrator's decision. *Carr v. Gates Health Care Plan*, 195 F.3d 292, 294 (7th Cir.1999) (under arbitrary and capricious standard, court's job is not "to decide whether [it] would reach the same conclusion as the Plan"); Jorden et al., *Handbook on ERISA Litigation* § 4.04[C][5][a].

▪ Plaintiff contends next that defendant acted arbitrarily and capriciously by concluding that the "incident" in this case was Rekowski's driving his truck into the lake. This argument ties in with plaintiff's interpretation of the word "operator." Because the plan does not define that term, it must be interpreted in its ordinary and popular sense as it is understood by persons of average intelligence and experience. *Bowles v. Quantum Chemical Co.*, 266 F.3d 622, 633 (7th Cir.2001). Citing Wisconsin law, plaintiff argues that an "op-

erator" is one who (1) physically manipulates or activates the controls of a vehicle to put it in motion, Wis. Stat. § 343.305(1)(c), or (2) starts the vehicle's engine or leaves it running, *Milwaukee County v. Proegler*, 95 Wis.2d 614, 628–29, 291 N.W.2d 608, 614 (1980). She contends that there was no evidence in the documents that defendant reviewed indicating that the truck went into the lake because Rekowski physically manipulated its controls or started its motor and left it running.

Defendant says that it determined that the "language of the exclusion for intoxication does not require that the vehicle be in operation at the time of the loss." Dft.'s Resp. Br., dkt. # 24, at 13. In addition, it contends that evidence in the claim file supports its conclusion that Rekowski drove the truck into the lake. It cites the Wisconsin Motor Vehicle Accident Report, the Chippewa County Coroner's report and Rekowski's death certificate. Each of these documents indicated that Rekowski drove his truck into the lake. In addition, the Chippewa County Coroner concluded that Rekowski drove the truck into the lake, put it in park, removed the keys from the ignition and fell asleep. The documents contain no other explanation concerning how Rekowski and the truck became submerged in the lake. Therefore, defendant contends, it was reasonable to conclude that Rekowski was the "operator" of the vehicle because he drove it into the lake. (From these arguments, it appears that defendant has no quarrel with plaintiff's contention that Rekowski was the "operator" of the truck only if he caused the truck to enter the lake by manipulating its controls or by turning the engine on or leaving it running.)

Plaintiff takes issue with defendant's conclusion. She notes that when the truck was pulled from the lake, the transmission

was in Park and the keys were not in the ignition. She contends that it would have been impossible for Rekowski to manipulate the truck's controls or start the truck's engine and cause it to go into the lake with the keys out of the ignition and the transmission in Park. According to plaintiff, it is just as likely that Rekowski "parked the truck short of the water, put it in park, removed the keys from the ignition, and fell asleep. The truck, by its own weight, could have slid down the boat launch and sank, which means that Mr. Rekowski's death could have occurred several hours after he put the truck in park and removed the keys from the ignition." Plt.'s Resp. Br., dkt. # 21, at 8.

In addition, plaintiff contends that it was improper for defendant to rely on the reports in the claim file because the conclusions reached in those reports were not based on eyewitness statements or any other direct evidence. In support of her conclusion, she cites *Schreck v. Reliance Standard Life Ins.*, 104 F.Supp.2d 1373 (S.D.Fla.2000). In that case, a man fell out of a moving vehicle and died. The defendant denied his widow's claim for accidental death benefits after concluding that the death was not accidental and fell within the plan's exclusion for self-inflicted injuries. The defendant relied on the medical examiner's report, a police report and the man's death certificate.

The court held that the arbitrator's decision to deny the widow's claim for benefits was arbitrary and capricious because the defendant did not have a reasonable basis for denying the claim on the basis of the facts before it. *Id.* at 1376. It noted that the police report and the medical examiner's report did not provide sufficient evidence to support a finding that the man intentionally left the car. The police report did not indicate whether anyone saw the man step out of the car and the medical examiner's conclusion that he leaped

from the car was not supported by findings from the autopsy or eyewitness statements. *Id.* at 1377. The court noted that a plan administrator has a duty to conduct a good faith investigation to determine the relevant facts and that this duty might require the administrator to interview eyewitnesses and undertake other efforts to fill in factual gaps in the documents it examines. Because the documents relied on by the defendant "provided only a cursory explanation of the cause of [ ] death and left out several important details," the court held that the defendant had acted arbitrarily and capriciously by failing to conduct any further investigation. *Id.* It remanded the case to the defendant for further investigation.

I agree with plaintiff that a plan administrator has a duty to conduct a good faith investigation to determine the facts material to a claim for benefits. I disagree with plaintiff's implication that defendant breached that duty in this case. Unlike in *Schreck*, there are no eyewitnesses to interview in this case because it is undisputed that no one saw Rekowski and the truck go into the lake. In fact, no one knows what happened to Rekowski for approximately thirty-six hours between April 13 and April 15, 2004. Exactly how he and the truck ended up in the lake will probably never be known. Faced with this critical factual gap, defendant reviewed the documents in the claim file and came to a reasonable and common sense conclusion about what happened. It is undisputed that the last time Rekowski was seen alive, he was behind the wheel of the truck, with a blood alcohol level at least three times above the legal limit in Wisconsin. Also, it is undisputed that, while Knuth went into the Paradise Shores to check in, Rekowski attempted to park the truck. It was nearly midnight when the men arrived at the resort. The accident report shows that

the boat landing was next to the resort's parking lot. Given these facts, it was not unreasonable for defendant to adopt the findings of the investigators, even though those findings were not based on direct evidence confirming their conclusions. Plaintiff's theory of the incident is just as speculative as defendant's. (Also, it should be noted that, under plaintiff's theory, Rekowski operated the vehicle and parked it close enough to the lake to slide in, despite being its being in Park.)

Defendant did not act arbitrarily and capriciously by relying on the explanations contained in the accident report, the coroner's report and the death certificate. Despite some factual similarities, *Schreck* is distinguishable from this case because defendant did not ignore eyewitnesses or other evidence that would explain how Rekowski and the truck ended up in the lake. It left no obvious stone unturned. Defendant's decision to invoke the intoxication exclusion and deny plaintiff's claim for accidental death benefits was not arbitrary and capricious. In light of this conclusion, I need not address the validity of the other grounds on which defendant denied plaintiff's claim.

### ORDER

IT IS ORDERED that defendant Metropolitan Life Insurance Company's motion for summary judgment is GRANTED and plaintiff Angela Rekowski's motion for summary judgment is DENIED. The clerk of court is directed to enter judgment for defendant and close this case.