John R. STEFFENS, Plaintiff-Appellant,

v.

BLUECROSS BLUESHIELD OF ILLINOIS,
Defendant-Respondent-Petitioner,

v.

Wesley D. DISHNO, AIG National Insurance
Company, Inc., BlueCross BlueShield of
Wisconsin and the Farmers Automobile
Insurance Association, Defendants.

Supreme Court

*No. 2009AP1558. Oral argument March 1, 2011.
—Decided July 8, 2011.*

2011 WI 60

(Also reported in 804 N.W.2d 196.)

514

For the defendant-respondent-petitioner there were briefs by *Sheila M. Sullivan, Sarah Germonprez* and *Bell, Moore, and Richter, S.C.,* Madison, and oral argument by *Ms. Germonprez.*

For the plaintiff-appellant there was a brief by *Amy M. Risseeuw, John C. Peterson,* and *Peterson, Berk, and Cross, S.C.,* Appleton, and oral argument by *Ms. Risseeuw.*

¶ 1. PATIENCE DRAKE ROGGENSACK, J. We review an unpublished opinion of the court of appeals[1] reversing the circuit court's order[2] granting Blue-Cross BlueShield of Illinois' (BlueCross) motion for declaratory judgment. BlueCross is a subrogated party in plaintiff John R. Steffens' (Steffens) lawsuit based on a June 2005 car accident. BlueCross's motion requested a declaration that Steffens reimburse Blue-Cross $67,477.57, the amount BlueCross paid pursuant to BlueCross's ERISA benefits plan (the Plan) that covered Steffens for accident-related injuries. The issues presented to this court are: (1) whether the Plan administrator's determination that under the Plan BlueCross is entitled to reimbursement is arbitrary and capricious; and (2) whether Steffens' prior representations that the surgery-necessitating injuries arose out of the automobile accident judicially estop him from now claiming that a degenerative condition caused the injuries for which surgery was performed.

---

[1] *Steffens v. BlueCross BlueShield of Ill.,* No. 2009AP1558, unpublished slip op. (Wis. Ct. App. Aug. 3, 2010).

[2] The Honorable Dee R. Dyer of Outagamie County presided.

¶ 2. We conclude that the Plan administrator's determination that BlueCross is entitled to reimbursement was not arbitrary and capricious. The Plan states that BlueCross is entitled to reimbursement from the beneficiary of the Plan for "expenses incurred as the result of, or that arose out of, an accident" when a third party "may be liable" for the payment of those expenses and the beneficiary obtains a settlement from the third party. The Plan gives the Plan administrator discretion to interpret the clause.

¶ 3. Prior to settlement, Steffens consistently asserted that the surgery-necessitating injuries arose out of a June 2005 automobile accident. Consequently, it was not arbitrary and capricious for the Plan administrator to interpret the Plan and conclude that Blue-Cross is entitled to reimbursement because the expenses that BlueCross paid arose from an accident for which a third party may be liable.

¶ 4. Our conclusion that the Plan administrator's determination that BlueCross is entitled to reimbursement is not arbitrary and capricious is dispositive of the case. We, therefore, do not reach the judicial estoppel issue.

## I. BACKGROUND

### A. The Accident

¶ 5. On June 29, 2005, Steffens was involved in an automobile accident in Outagamie County. According to Steffens, he was stopped at a traffic light when Wesley Dishno's (Dishno) vehicle hit him from behind. This pushed Steffens into the van in front of him. Steffens suffered injuries as a result of the accident.

¶ 6. Steffens visited the emergency room approximately two hours after the accident. He complained of

a headache, as well as shoulder and neck pain. No significant procedures were performed during this visit. Various doctors' notes from July of 2005 to March of 2006 indicate that Steffens continued to suffer from pain and stiffness in his neck, upper back, thorax, and shoulders. Moreover, in the months immediately following the accident, Steffens suffered from headaches.

¶ 7. In early March of 2006 Steffens was beginning to experience lower back pain with intermittent radiation to his lower extremities. This low back pain continued throughout 2006. In December of 2006, Steffens had a Magnetic Resonance Imaging (MRI) of his spine. The MRI revealed that at vertebrae L5–S1, Steffens had a grade-one spondylolisthesis.[3] On May 22, 2007, Steffens underwent L5–S1, lumbosacral fusion surgery.

¶ 8. The medical notes indicate that Steffens' pain improved following the surgery. Moreover, Steffens had asserted that he did not have any back pain prior to the June 2005 accident.

## B. The Plan

¶ 9. As aforementioned, Steffens was a beneficiary under an ERISA[4] plan provided by BlueCross. BlueCross paid for a significant portion of Steffens' back and neck related medical expenses, including the lumbosacral fusion surgery, as it was required to do under the Plan. The Plan has a "Reimbursement, Subrogation, and/or Right of Reduction" clause. The

[3] Spondylolisthesis is a "[f]orward movement of the body of one of the lower lumbar vertebrae on the vertebra below it, or upon the sacrum." *Stedman's Medical Dictionary* 1678 (27th ed. 2000).

[4] ERISA is the acronym for the Employee Retirement Income Security of Act of 1974.

clause gives the administrator discretion to interpret its terms. It states: "The Plan/Plan administrator has sole discretion to interpret the terms of this provision in its entirety . . . ."

¶ 10. The clause details when BlueCross is entitled to subrogation:

> If any benefits payable under the Plan to you or your dependents were for expenses incurred as the result of, or that arose out of, an accident or other situation such that other party or parties, may be liable for the payment of expenses and you subsequently obtain a settlement from or a judgment against such other party or parties, you or your dependents are obligated to reimburse the Plan. The Plan's right to reduction, reimbursement and subrogation apply regardless of whether the settlement or award is designated as payment for, but not limited to pain and suffering, wage loss, loss of consortium, medical benefits, and other specified damages. The Plan has first priority with respect to its right to reduction, reimbursement and subrogation.

¶ 11. In addition, the clause explicitly gives Blue-Cross a right of first priority, notwithstanding the make-whole doctrine:

> The Plan's right to reduction, reimbursement and subrogation will not be reduced even if the recovery does not fully compensate you or your dependents, or you or your dependents were not made whole, for all losses sustained or alleged, or the recovery is not described as being related to medical costs. The amount the Plan is entitled to will also not be reduced by legal fees or court costs incurred in seeking the recovery. Any so-called "make-whole" or "full-compensation" rule or doctrine is hereby explicitly rejected and disavowed.

## C. Pre-Settlement Litigation

¶ 12. On January 2, 2008, Steffens filed a complaint against Dishno demanding compensatory damages for the accident. The complaint was later amended on February 25, 2008. According to the amended complaint, the accident caused Steffens severe, permanent, and costly injuries:

> As a direct and proximate consequence of the negligence of the defendant, Wesley D. Dishno, the plaintiff, John R. Steffens, was severely and permanently injured, has been unable to undertake his usual activities and occupations for a sustained period of time, has incurred significant expenses for the care and treatment of his injuries, and has been otherwise permanently injured and damaged.[5]

¶ 13. In addition to Dishno, Steffens named AIG National Insurance Company (AIG), BlueCross, and the Farmers Automobile Insurance Association (Farmers) as defendants. AIG was named as a defendant because Dishno carried AIG's automobile liability insurance. Steffens named both BlueCross and Farmers[6] due to their potential rights of subrogation. According to the complaint, both insurers "paid some of the medical bills incurred by John R. Steffens as a result of injuries sustained in the collision."[7] Despite naming them as subrogated parties, Steffens asked in the complaint for a "judgment against [BlueCross and Farmers], foreclosing any claim they may have for subrogation."

¶ 14. Subsequent to the amended complaint, on March 17, 2008, BlueCross filed a cross-claim against

---

[5] Am. Compl., ¶ 8.

[6] The Farmers policy does not come within ERISA.

[7] *Id.*, ¶¶ 4–5.

Dishno and AIG, and a counterclaim against Steffens. BlueCross's cross-claim alleged that it "has paid medical bills on behalf of John R. Steffens for treatment of injuries suffered in the accident of June 29, 2005, in the amount of $67,477.57."[8] Moreover, BlueCross asserted that because the Plan is an ERISA plan, BlueCross's subrogated interest is not subject to the "make-whole" doctrine.[9] BlueCross's counterclaim alleged that under the Plan, Steffens is obligated to reimburse BlueCross, out of any recovery in the action for the $67,477.57 paid by BlueCross.[10] BlueCross attached a "Medical Itemization Report" stating the amounts billed for injuries related to the accident and the lien amounts held by BlueCross. Steffens' surgery was listed.

¶ 15. On April 10, 2008, Steffens replied to BlueCross's counterclaim, asserting that "BlueCross . . . is entitled to no reimbursement for medical expenses paid in this matter until and unless Plaintiff is made whole."[11] This was the only assertion Steffens made in his reply. Notably, Steffens did not contest the dollar amount, *i.e.*, the $67,477.57 that BlueCross claimed it had paid "for treatment of injuries suffered in the accident of June 29, 2005."[12] To the contrary, throughout the first year of litigation, Steffens asserted that BlueCross had paid $67,477.57 and that the surgery-necessitating injuries arose out of the accident.

[8] BlueCross's Cross-cl. & Countercl., ¶ 2b.

[9] *Id.*, ¶ 2e-f.

[10] *Id.*, ¶ 3. Farmers filed a similar response, however, Farmers alleged that it had only paid $2,000 to or on behalf of Steffens for medical expenses incurred as a result of the accident. Farmers is no longer involved in this lawsuit.

[11] Steffens' Reply to Countercl.

[12] BlueCross's Cross-cl. & Countercl., ¶ 2b.

¶ 16. In particular, Steffens responded to interrogatories in April of 2008. Steffens described the extent of his injuries from the accident:

> I sustained a back injury that resulted in a lumbosacral fusion surgery. Initially, following the accident, I primarily had pain that radiated down my leg all the way to my toes. After the surgery, my pain was primarily isolated in my low back at the surgery site. The injuries have affected, impaired and changed my life in numerous ways. For example, prior to the accident I enjoyed golfing, snowboarding and snowmobiling, however, since the accident I have not been able to participate in those activities. Additionally, normal day-to-day activities have been difficult for me since the accident. Specifically, activities that require bending over are difficult and I have pain even when I try to tie my shoes. Standing for prolonged periods of time is painful as well.

¶ 17. Steffens made other relevant assertions in his responses to interrogatories. First, he averred that his back injury was permanent and that his surgeon, Dr. Randall Johnson, M.D. (Dr. Johnson), "ha[s] or will" diagnose the permanent injury. Second, he asserted that he made a claim for medical coverage to BlueCross "arising out of the incident," and specifically, that BlueCross has made "payments totaling $64,751.40." Finally, Steffens claimed that he was entitled to medical expenses totaling $130,712.19.

¶ 18. In addition to his April 2008 interrogatory answers, on May 9, 2008, Steffens sent a request for admissions to all counsel of record. In his request, he asked that all parties admit that the surgery expense "was necessary . . . to provide the essential care and treatment for injuries sustained by . . . Steffens, which were caused by the June 29, 2005 automobile accident."

¶ 19. Likewise, on May 13, 2008, Steffens filed a scheduling conference statement with the court that reiterated that he was seeking the cost of his surgery as damages. Namely, in the statement, when asked to "itemize claimed special damages," Steffens stated: "The plaintiff incurred medical expenses in the amount of $132,282.19." On the same day, Steffens filed a "Disclosure of Expert Witnesses" list with the court. In this disclosure, Steffens listed Dr. Johnson as his expert witness.

D. The Settlement and Post-Settlement Litigation

¶ 20. In January of 2009, Steffens reached a settlement agreement with Dishno and AIG. Under the settlement, AIG was to pay Steffens $100,000, the AIG policy limits. BlueCross was not advised of the settlement negotiations.

¶ 21. Subsequently, on February 9, 2009, Steffens mailed BlueCross amended answers to the interrogatories. In the amended answers Steffens no longer claimed that the surgery-necessitating injuries arose out of the accident. Steffens, instead, described the extent of his injuries from the accident as follows:

> I sustained injuries to my upper back and neck which resulted in what the records describe as occipital headaches. The injuries caused me substantial discomfort, and I had multiple visits to my doctor as well as prescribed physical therapy. I subsequently, in the following year, developed a serious problem with my low back. I subsequently received the evaluation of Independent Medical examiner, Dr. William T. Monacci, which I am attaching to these amended answers and incorporating by reference. I now have learned that my low back pain and surgery was not related to the accident.

With regard to the specific treatment that Steffens received for the accident related injuries, he stated, "I was seen at the emergency room of Appleton Medical Center on the day of the accident. I was subsequently treated by my family doctor, Dr. John Ganser, and his associates. Finally, in January and February, 2006, I received physical therapy at Appleton Medical Center."

¶ 22. Steffens' amended answers to the interrogatories included these additional distinctions from his first answers:

- The accident did not result in any permanent injury.

- BlueCross made payments totaling only $1,934.50 for medical expenses arising out of the accident.

- The total amount of medical expenses to which Steffens was entitled because of the accident was $2,441.50.

- Dr. William T. Monacci was listed as Steffens' expert witness. Dr. Johnson was no longer listed as a treating physician or an expert.

¶ 23. Notably, Dr. Monacci had performed an independent medical evaluation of Steffens on October 2, 2008. In his report, filed with the circuit court on October 13, 2008, Dr. Monacci concluded that the L5–S1 spondylolisthesis was a progressive degenerative condition unrelated to the accident. Prior to the settlement, Dr. Monacci had been named as the defendant tortfeasor Dishno and his insurer AIG's expert witness. Dr. Monacci was not listed as a witness on an amended expert witness list Steffens filed in December of 2008.

¶ 24. In response to Steffens' changed position regarding the cause of the surgery-necessitating injuries, BlueCross moved for declaratory judgment to

determine its rights under the Plan. BlueCross requested a declaration that Steffens had an obligation to reimburse BlueCross the $67,477.57 "it paid to treat injuries Steffens claimed he suffered in the car accident of June 29, 2005" and that under the Plan, Steffens owed BlueCross attorney fees. BlueCross argued that it is entitled to reimbursement before Steffens is made whole because the Plan is an ERISA plan that explicitly disavows the make-whole doctrine.

¶ 25. Next, BlueCross argued that the doctrine of judicial estoppel barred Steffens from now asserting that the surgery-necessitating injuries did not arise out of the accident. BlueCross listed the three elements of judicial estoppel as set forth in *Salveson v. Douglas County*, 2001 WI 100, 245 Wis. 2d 497, 630 N.W.2d 182, and argued that all elements had been met in this case. The elements are: "(1) the later position must be clearly inconsistent with the earlier position; (2) the facts at issue should be the same in both cases; and (3) the party to be estopped must have convinced the first court to adopt its position." *Id.,* ¶ 38.

¶ 26. Finally, BlueCross argued that it is not required to prove that the surgery-necessitating injuries were caused by the accident. Specifically, BlueCross underscored the language of the Plan that states, "[t]he Plan's right to reduction, reimbursement and subrogation will not be reduced even if . . . the recovery is not described as being related to medical costs." Therefore, BlueCross argued that "the only facts required to trigger BlueCross's right to reimbursement are (1) that it paid for medical benefits and (2) that the medical benefits were used to invoke a settlement." Finally, BlueCross contended that the Plan gives the Plan administrator "sole discretion" to interpret the relevant terms of the Plan, and that the Plan administrator's

interpretation of BlueCross's rights under the Plan was not arbitrary and capricious.

¶ 27. In his response, Steffens argued that the doctrine of judicial estoppel did not apply to this case because he had not taken inconsistent positions. In particular, he argued that he changed his position after he received the independent medical evaluation of Dr. Monacci and that his interrogatories were amended in accordance with Wisconsin's discovery statutes.

¶ 28. Steffens acknowledged in his response that the Plan trumps the Wisconsin make-whole doctrine. He argued, however, that BlueCross is entitled to reimbursement only if BlueCross can prove that the accident caused the surgery-necessitating injuries.

¶ 29. The circuit court ordered Steffens to reimburse BlueCross $64,751.40,[13] plus attorney fees and costs. The court concluded that, based on Steffens' previous assertions that the surgery-necessitating injuries arose from the accident, he was judicially estopped from now arguing that the injuries were the result of a degenerative condition. In its oral decision, the court opined:

> [T]o not find today that the ERISA plan is entitled to their payment from this plaintiff would be essentially the plaintiff perpetrating a fraud on the Court.
>
> This plaintiff said in answers sworn under oath that the medical bills that Blue Cross paid were related· to his accident. He stated that in the accident I sustained a back injury that resulted in a lumbosacral fusion surgery. Under oath he stated, yes, I have made

---

[13] Prior to the order, the parties debated whether the amount BlueCross paid for the accident-related injuries was $66,353.57 or $64,751.40. BlueCross agreed to the $64,751.40 figure for the sake of getting the matter resolved quickly.

a claim for injuries arising out of the accident. According to the records of my attorneys, [BlueCross] made payments totalling $64,751.40. He said when asked about injuries received as a result of the accident, he said, on May 22, 2007, I had a lumbosacral fusion surgery; and he further said my medical expenses resulting from the accident total $130,712.19.

I realize that he changed his letter—his responses to his interrogatories after he made settlement in this case. And it's got to be noted that the total medical expense for which the settlement of $100,000 was paid is now over $2,000. It just bears no credibility to say that this did not have some relatedness, that is, the surgery had some relatedness to this settlement. There's no question about that. The fact that, of course, there was only $100,000 available—That's a fact of this case and that's perhaps why the case was settled for that. Still we know that ERISA trumps everything.

So in this case this party, [BlueCross], is entitled to their money back under all of the circumstances here. Not to do so I find that—that Mr. Steffens is judicially estopped from taking a contrary position because he played it for all it was worth in the settlement of this case; and it's the same, you know, had no action even been started and he settled for that amount. ERISA would still have a claim back, and it's clear here that we have the testimony of the very person himself linking it to those very expenses.

¶ 30. Steffens appealed. In an unpublished opinion, the court of appeals reversed the circuit court's order. *Steffens v. BlueCross BlueShield of Ill.*, No. 2009AP1558, unpublished slip op. (Wis. Ct. App. Aug. 3, 2010). First, with regard to judicial estoppel, the court concluded that, while there was no question that Steffens took inconsistent positions, the third element of judicial estoppel had not been met because Steffens had

"never convinced any court to adopt his position that the surgery was related to the accident." *Id.,* ¶ 9. The court noted that no Wisconsin court has ever construed a position taken at settlement as satisfying the third element. *Id.,* ¶ 10.

¶ 31. The court of appeals also held that Blue-Cross must prove that the surgery-necessitating injuries were related to the accident. *Id.,* ¶¶ 11–15. The court acknowledged that it owed substantial deference to BlueCross's interpretation. *Id.,* ¶ 15. Nonetheless, the court concluded that nothing in the Plan authorized reimbursement for benefits BlueCross paid that were not related to the accident. *Id.* Therefore, the court reversed and remanded the declaratory judgment to give BlueCross an opportunity to prove that it is entitled to reimbursement. *Id.,* ¶ 16.

¶ 32. We granted review and now reverse the court of appeals.

## II. DISCUSSION

### A. Standard of Review

¶ 33. We review the court of appeals decision regarding the Plan administrator's interpretation of rights and obligations under BlueCross's ERISA plan documents. In turn, our review encompasses a review of the Plan administrator's interpretation and application of the Plan in regard to whether Steffens was required to reimburse BlueCross for the cost of his back surgery. *Summers v. Touchpoint Health Plan, Inc.,* 2008 WI 45, ¶¶ 16–17, 309 Wis. 2d 78, 749 N.W.2d 182.

▬▬

¶ 34. As discussed in-depth below, when an ERISA plan gives the plan administrator the discretion to interpret and apply the plan, we review the administrator's

decisions under a discretionary standard. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111 (1989); *Summers,* 309 Wis. 2d 78, ¶ 16. Under the discretionary standard of review, we will not reverse a decision of a plan administrator unless the decision was not reasonable. *Firestone,* 489 U.S. at 111; *Cutting v. Jerome Foods, Inc.,* 993 F.2d 1293, 1299 (7th Cir. 1993). A plan administrator's discretionary decision is not reasonable if it is "arbitrary and capricious." *Firestone,* 489 U.S. at 114–15; *Summers,* 309 Wis. 2d 78, ¶ 16.

¶ 35. However, whether the plan at issue gives the administrator interpretive discretion, such that his decision will be reviewed under a discretionary standard, requires us to construe the written plan documents to determine the authority of the plan administrator. *Summers,* 309 Wis. 2d 78, ¶ 16. Review of a plan administrator's decision is limited "to the record available to the plan administrator at the time the decision was made." *Rekowski v. Metro. Life Ins. Co.,* 417 F. Supp. 2d 1040, 1047 (W.D. Wis. 2006) (citing *Hess v. Hartford Life & Accident Ins. Co.,* 274 F.3d 456, 462 (7th Cir. 2001); *Smart v. State Farm Ins. Co.,* 868 F.2d 929, 936 (7th Cir. 1989)); *see also Brown v. Ret. Comm. of Briggs & Stratton Ret. Plan,* 575 F. Supp. 1073, 1076 (E.D. Wis. 1983). "Deferential review is accorded to the plan administrator's interpretation of the plan's terms and its factual findings." *Rekowski,* 417 F. Supp. 2d at 1047 (citing *Paramore v. Delta Air Lines, Inc.,* 129 F.3d 1446, 1450–51 (11th Cir. 1997)).

### B. Foundational Principles

¶ 36. BlueCross claims it is entitled to reimbursement for expenses paid for Steffens' back surgery under the Plan's right of subrogation. Subrogation is "[t]he

substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor." *Black's Law Dictionary* 1563–64 (9th ed. 2009).

¶ 37. There are three basic types of subrogation: (1) contractual subrogation, *Millers National Insurance Co. v. City of Milwaukee,* 184 Wis. 2d 155, 167, 516 N.W.2d 376 (1994); (2) statutory subrogation, *Ellsworth v. Schelbrock,* 2000 WI 63, ¶ 19, 235 Wis. 2d 678, 611 N.W.2d 764; and (3) equitable subrogation, *Berna-Mork v. Jones,* 174 Wis. 2d 645, 652–53, 498 N.W.2d 221 (1993). We also note that it has been opined that all subrogation "rights are governed by equitable principles" to some degree. Russell M. Ware, *The Law of Damages in Wisconsin,* § 32.6, p. 6 (5th ed. 2010). The ERISA case before us involves a species of contractual subrogation because BlueCross's right of subrogation arises under the Plan documents.

¶ 38. All parties agree that the Plan is governed by ERISA. ERISA was enacted, in part, to set forth "minimum standards . . . assuring the equitable character of [employee benefit] plans and their financial soundness." 29 U.S.C. § 1001(a) (2008).[14] In other words, "Congress enacted ERISA to ensure that employees would receive the [contractually defined] benefits they had earned." *Conkright v. Frommert,* 556 U.S. __, 130 S. Ct. 1640, 1648 (2010); *Firestone,* 489 U.S. at 113.

¶ 39. ERISA applies to "any plan, fund, or program which was heretofore or is hereafter established

---

[14] All references to the United States Code are to the 2008 version unless otherwise noted.

or maintained by an employer or by an employee organization" for the purpose of providing participants specified benefits.[15] 29 U.S.C. § 1002(1). However, ERISA does not "require employers to establish benefit plans in the first place." *Conkright,* 130 S. Ct. at 1648.

¶ 40. Therefore, ERISA strives to ensure the equitable enforcement of employees' rights under employee benefit plans while, at the same time, encouraging employers to create such plans. As the Supreme Court recently explained:

> ERISA represents a careful balancing between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans. Congress sought to create a system that is not so complex that administrative costs, or litigation expenses, unduly discourage employers from offering ERISA plans in the first place. ERISA induces employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred.

*Id.* at 1649 (internal quotations, brackets and citations omitted). *See also Varity Corp. v. Howe,* 516 U.S. 489, 497 (1996) (describing the competing congressional goals of ERISA as the "desire to offer employees enhanced protection for their benefits, on the one hand, and, on the other, its desire not to create a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefit plans in the first place").

---

[15] Those benefits include: "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services." 29 U.S.C. § 1002(1)(A).

¶ 41. ERISA commands that a plan "specify the basis on which payments are made to and from the plan," 29 U.S.C. § 1102(b)(4), and that the plan's fiduciary "discharge his duties with respect to a plan . . . in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D).

■

¶ 42. Under all ERISA plans, a plan fiduciary, often termed the plan administrator, determines whether participants are eligible for requested benefits. *Diaz v. Prudential Ins. Co. of Am.*, 424 F.3d 635, 637 (7th Cir. 2005). No provision of ERISA sets forth the appropriate standard a court should employ when reviewing a plan administrator's benefit determinations, *Firestone*, 489 U.S. at 108–09, or determinations regarding the enforcement of plan terms. Ronald J. Cooke, *ERISA Practice and Procedure* § 8:14, at 8–104 (2d ed. 2010) [hereinafter "Cooke, *ERISA Practice*"]. However, the Supreme Court did so in *Firestone*.[16]

¶ 43. In *Firestone*, when presented the question of what standard courts should employ when reviewing an administrator's benefit determinations, the Court refused to adopt a uniform standard of review to be applied in all ERISA cases. Instead, the Court concluded that the language of the plan itself should govern the standard of review, thereby allowing parties to bargain for the applicable standard. In instances

---

[16] Pronouncements of the United States Supreme Court on federal law bind this court. *State v. Webster,* 114 Wis. 2d 418, 426 n.4, 338 N.W.2d 474 (1983). Moreover, we look to other applicable federal case law in reviewing actions of ERISA plan administrators. *Evans v. W.E.A. Ins. Trust,* 122 Wis. 2d 1, 14, 361 N.W.2d 630 (1985). *See also Schultz v. NEPCO Emps. Mut. Benefit Ass'n, Inc.,* 190 Wis. 2d 742, 746 n.5, 528 N.W.2d 441 (Ct. App. 1994).

when a plan does not specify a standard, however, the Court held that courts should review the administrator's determination under a de novo standard. In particular, the Court held that "a denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[17] *Firestone,* 489 U.S. at 115.

¶ 44. Notably, *Firestone* explicitly limited its discussion and holding to actions challenging the denial of benefits under 29 U.S.C. § 1132(a)(1)(B).[18] *Id.* at 108. However, we are not faced with an action brought by a plan participant challenging the denial of benefits under § 1132(a)(1)(B). Rather, this is an action brought by the Plan administrator under § 1132(a)(3)(B)[19] to enforce the subrogation terms of the Plan. *See Mank ex rel. Hannaford Health Plan v. Green,* 297 F. Supp. 2d 297, 301 (D. Me. 2003).

---

[17] The *Firestone* standard of review applies even if the administrator is operating under a conflict of interest. *Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 115 (2008). When considering the lawfulness of an administrator's determination, a reviewing court, however, should consider the conflict as one factor in the analysis. *Id.* at 117.

[18] Pursuant to 29 U.S.C. § 1132(a)(1)(B): "A civil action may be brought—(1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

[19] Pursuant to 29 U.S.C. § 1132(a)(3): "A civil action may be brought . . . (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

¶ 45. The Seventh Circuit and Wisconsin courts apply the *Firestone* test when deciding the appropriate level of review of a plan administrator's interpretation and application of an ERISA plan's subrogation clause. *See Cutting*, 993 F.2d at 1296; *Schultz v. NEPCO Emps. Mut. Benefit Ass'n, Inc.*, 190 Wis. 2d 742, 747–48 & n.6, 528 N.W.2d 441 (Ct. App. 1994).

¶ 46. Under *Firestone*, determining the appropriate standard of review for the administrator's subrogation determination that is at issue here is "a matter of contract." *Williams v. Interpublic Severance Pay Plan*, 523 F.3d 819, 821 (7th Cir. 2008). *Firestone* prescribes that "[b]y using particular language, the plan's sponsors can require deferential review." *Id.* As such, the *Firestone* test is consistent with contract law. Under contract law, contracting parties are entitled to receive the benefits of their bargain. *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 404, 573 N.W.2d 842 (1998). "[T]he best indication of the parties' intent is the language of the contract itself." *Town Bank v. City Real Estate Dev., LLC*, 2010 WI 134, ¶ 33, 330 Wis. 2d 340, 793 N.W.2d 476. Therefore, when enforcing an unambiguous contract, the court looks to the contract terms, and it is those terms that are enforced. *See Mackenzie v. Miller Brewing Co.*, 2001 WI 23, ¶ 28, 241 Wis. 2d 700, 623 N.W.2d 739.

¶ 47. Allowing parties to bargain for the amount of deference given to the plan administrator is also consistent with the policies underlying ERISA. As aforementioned, one of ERISA's primary goals is to encourage employers to offer benefit plans to their employees. *Conkright*, 130 S. Ct. at 1649. In order to encourage employers to adopt these plans, Congress sought to create a system that is straightforward, thereby mini-

mizing administrative and litigation expenses. *Varity,* 516 U.S. at 497. Affording employers the ability to bargain for a deferential standard gives them the ability to minimize these expenses.

¶ 48. A critical question when deciding whether an ERISA plan affords discretion to the administrator is notice. *Diaz,* 424 F.3d at 637. "[P]articipants must be able to tell from the plan's language whether the plan is one that reserves discretion for the administrator." *Id.* In other words, the language of the plan granting the plan administrator discretion must be clear. Cooke, *ERISA Practice* § 8:14, at 8–113.

¶ 49. There are no "magic words" required in order to afford the administrator discretion. *Herzberger v. Standard Ins. Co.,* 205 F.3d 327, 331 (7th Cir. 2000). However, a plan's provision stating that the plan administrator has the authority to make eligibility determinations is insufficient to put the participant on notice that the administrator's decisions will be reviewed under a discretionary standard. *Diaz,* 424 F.3d at 637. A plan's requirement that an applicant submit "satisfactory proof of entitlement" also is not sufficient notice. *Id.* By contrast, notice is sufficient when a plan gives the plan administrator the "sole discretion" to interpret the terms of the plan. *Cutting,* 993 F.2d at 1295–96. In such a case, an administrator's decisions are reviewed under the discretionary arbitrary and capricious standard.[20] *Id.*

---

[20] The Seventh Circuit has also suggested that employers use the following "safe harbor" language if they want to be sure their plan gives adequate notice that a discretionary standard will be applied: "Benefits under this plan will be paid only if

¶ 50. When a plan gives the plan administrator discretion to interpret the terms of the plan, a reviewing court will not reverse the plan administrator's interpretation unless it is not reasonable. *See Firestone,* 489 U.S. at 111. A plan administrator's interpretation of the plan is not reasonable if the interpretation is "arbitrary and capricious *in light of the language of the Plan." Evans v. W.E.A. Ins. Trust,* 122 Wis. 2d 1, 14, 361 N.W.2d 630 (1985) (quoting *Wardle v. Cent. States, Se. & Sw. Areas Pension Fund,* 627 F.2d 820, 823–24 (7th Cir. 1980) (*abrogated on other grounds by Firestone,* 489 U.S. 101)); *see also Summers,* 309 Wis. 2d 78, ¶ 16. Both the plan administrator's interpretation of a plan's terms and the plan administrator's factual findings are reviewed under this discretionary standard. *Rekowski,* 417 F. Supp. 2d at 1047. Stated another way, a reviewing court will not reverse a plan administrator's decision unless it is "downright unreasonable." *Ruiz v. Cont'l Cas. Co.,* 400 F.3d 986, 991 (7th Cir. 2005) (internal quotation marks omitted).

¶ 51. Review of a plan administrator's decision is limited "to the record available to the plan administrator at the time the decision was made." *Rekowski,* 417 F. Supp. 2d at 1047 (citing numerous Seventh Circuit cases). *See also* Cooke, *ERISA Practice* § 8:14, at 8–121 (explaining that this limitation is the general rule).

¶ 52. Subrogation clauses in ERISA plans trump the Wisconsin make-whole doctrine.[21] *Cutting,* 993 F.2d

the plan administrator decides in his discretion that the applicant is entitled to them." *Herzberger v. Standard Ins. Co.,* 205 F.3d 327, 331 (7th Cir. 2000) (internal quotation marks omitted).

[21] Wisconsin has adopted the make-whole doctrine. An injured party is not made whole until "there has been full compensation for all the damage elements of the entire cause of

at 1298–99 (Under ERISA, "the make-whole rule is just a principle of interpretation, it can be overridden by clear language in the plan."); *see also Ruckel v. Gassner,* 2002 WI 67, ¶ 42 n.7, 253 Wis. 2d 280, 646 N.W.2d 11; *Newport News Shipbuilding Co. v. T.H.E. Ins. Co.,* 187 Wis. 2d 364, 371–72, 523 N.W.2d 270 (Ct. App. 1994). This, too, is in line with the goal of ERISA to encourage employers to adopt benefit plans and the principle of contract law that parties are entitled to the benefits of their bargain. As one court has explained:

> [G]iven that an employer is free to refuse to provide a health benefit plan in the first place, it is unclear why, if the employer does provide such a plan, it may not condition benefits on the agreement of the members to reimburse the plan from payments received from other parties responsible for the injury. Having accepted benefits under a plan that expressly required reimbursement from money received from responsible third parties, regardless of the amount received, it does not seem inequitable that plaintiff fulfill her obligation under the plan.

*Forsling v. J.J. Keller & Assocs., Inc.,* 241 F. Supp. 2d 915, 920 (E.D. Wis. 2003).

### C. Application

¶ 53. We now apply the principles set forth above to the facts and circumstances of this case. The subro-

---

action." *Rimes v. State Farm Mut. Auto. Ins. Co.,* 106 Wis. 2d 263, 275, 316 N.W.2d 348 (1982). The made-whole doctrine provides that "only where an injured party has received an award by judgment or otherwise which pays all of his elements of damages, including those for which he has already been indemnified by an insurer, is there any occasion for subrogation." *Id.*

gation clause in the Plan unambiguously disavows the make-whole doctrine and asserts BlueCross's right of first priority. It states:

> The Plan's right to reduction, reimbursement and subrogation will not be reduced even if the recovery does not fully compensate you or your dependents, or you or your dependents were not made whole, for all losses sustained or alleged, or the recovery is not described as being related to medical costs. . . . *Any so-called "make-whole" or "full-compensation" rule or doctrine is hereby explicitly rejected and disavowed.*

Under ERISA jurisprudence, this clear language asserting a right of first-priority trumps the make-whole doctrine. *Cutting,* 993 F.2d at 1298–99. Therefore, as Steffens has rightfully conceded, the make-whole doctrine has no application here.

¶ 54. The subrogation clause in the Plan unambiguously gives the Plan administrator discretion to make subrogation decisions. It states: "The Plan/Plan Administrator has sole discretion to interpret the terms of this provision in its entirety." When an ERISA plan states that the administrator has "sole discretion" to interpret the plan, the administrator's decision is reviewed under the discretionary standard established in *Firestone. Summers,* 309 Wis. 2d 78, ¶ 16; *Cutting,* 993 F.2d at 1295–97. Therefore, under the Plan, we will overturn the Plan administrator's decision only if it was arbitrary and capricious. *Summers,* 309 Wis. 2d 78, ¶ 16.

¶ 55. Having concluded that the make-whole doctrine does not apply to Steffens' claim, and that the Plan administrator's determinations under the subrogation clause are reviewed under a discretionary stan-

dard, we move to the main issue presented: whether the Plan administrator's determination was arbitrary and capricious. The Plan administrator determined that the surgery expenses were "expenses incurred as the result of, or that arose out of, an accident" for which another party "may be liable," thereby entitling Blue-Cross to reimbursement.[22]

¶ 56. Under the facts and circumstances presented, we conclude that the Plan administrator's determination was not arbitrary and capricious. Under the Plan, BlueCross has a subrogation right for:

---

[22] Steffens erroneously argues that BlueCross must prove causation, namely, that the accident caused the surgery-necessitating injuries. Steffens grounds this argument in the law of negligence under which causation is an element. However, the subrogation issue here arises under contract law, not tort law. *See Herzberger,* 205 F.3d at 330 ("An ERISA plan is a contract."). Therefore, we look to the terms of the contract, *i.e.,* the terms of the Plan. Pursuant to the terms, the question is whether the administrator's determination that the surgery-necessitating injuries arose from the accident was arbitrary and capricious, not whether BlueCross must prove the accident caused the injuries.

An example provided by Steffens illustrates his error in grounding his argument in tort law. In an attempt to argue that BlueCross must prove causation, he contends: "For instance, if an insured injures his arm in a car accident and subsequently has an unrelated surgery on his toe, the insurer would be able to take money out of a settlement regarding the arm for bills the insurer paid on the toe surgery, if not required to prove causation." Under the law set out above, and assuming the plan in this example is identical to BlueCross's Plan, this example reaches an erroneous conclusion. Under the Plan, the insurer would not be capable of reimbursement from the settlement money unless the Plan administrator reasonably determined that the toe surgery arose from the car accident. Such a determination would be arbitrary and capricious since the example explicitly states that the two events were unrelated.

any benefits payable under the Plan to you or your dependents [that] were for expenses incurred as the result of, or that arose out of, an accident or other situation such that other party or parties, may be liable for the payment of expenses and you subsequently obtain a settlement from or a judgment against such other party or parties.

Therefore, BlueCross has a right to be reimbursed for the surgery expenses if the Plan administrator determined that the surgery expenses incurred as a result of or arose out of the 2005 accident for which Dishno may be liable, and his determination is not arbitrary and capricious. *Id.,* ¶ 16. Stated otherwise, we determine whether the Plan administrator's interpretation of the terms of the Plan under the facts and circumstances herein presented is reasonable. *Firestone,* 489 U.S. at 111.

¶ 57. Steffens' amended complaint alleged that he suffered injuries due to the negligence of Dishno and that those injuries caused him to incur "significant expenses for the care and treatment of his injuries." As evidenced by the counterclaim and cross-claim that BlueCross filed on March 17, 2008, the Plan administrator did determine that the surgery expenses were incurred as a result of or arose out of the accident and that Dishno may be liable for them. In the cross-claim, BlueCross asserted that it had paid $67,477.57 in medical bills "on behalf of John R. Steffens for treatment of injuries suffered in the accident of June 29, 2005." Moreover, attached to the cross-claim was a "Medical Itemization Report" that listed the cost of the May 22, 2007 surgery.[23]

---

[23] The dissent makes an issue of the lack of a formal and written decision by the Plan administrator. Dissent, ¶¶ 74–80.

¶ 58. The decision of the Plan administrator that the surgery-related expenses fell within the Plan's right

Because the record does not contain a written decision with an explanation for "how and why the plan administrator made the decision about subrogation," *id.*, ¶ 74, the dissent argues that we cannot evaluate the reasonableness of the administrator's determination that the surgery-necessitating injuries arose out of the accident and that BlueCross is entitled to subrogation. *Id.*, ¶¶ 74–80. While taking issue with the lack of such a decision in the record, the dissent acknowledges that formal, written decisions are not statutorily required when an administrator interprets a plan for the purpose of invoking the plan's subrogation rights. *Id.*, ¶ 80 n.1. Nevertheless, the dissent summarily concludes that plan administrators should meet notice requirements similar to those set forth in 29 U.S.C. § 1133, which apply when an administrator denies a plan participant benefits. *Id.* Chapter 29 U.S.C. § 1133 requires the plan to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial."

The facts of this case, however, highlight one potential reason Congress may have chosen to require notice requirements in benefits denial cases, and not in subrogation cases. Namely, it is probable that in many cases where subrogation becomes the issue, the insured and administrator agree that the injuries arose out of the accident, as occurred pre-settlement here. Requiring a formal, written decision in cases where all parties to the benefits contract agree would be inefficient. Moreover, unlike a benefits denial situation, when an administrator invokes a plan's subrogation rights, he is not automatically adverse to the participant. That is, the administrator is not denying the participant benefits under the plan, but rather has already provided benefits and is seeking payment from a third party. Consequently, while we agree with the dissent that in some instances a formal written decision would be ideal, that often will not be necessary when dealing with an administrator's invocation of a plan's right to subrogation. Therefore, contrary to the dissent's position, we review all of the relevant circumstances presented when evaluating the reasonableness of the administrator's interpretation.

of subrogation is evaluated based on the information that the Plan administrator had when he made his decision. *Rekowski,* 417 F. Supp. 2d at 1047. Given the facts and circumstances of this case, we cannot say the Plan administrator's determination was arbitrary and capricious. Stated otherwise, the Plan administrator's decision was reasonable.

¶ 59. The reasonableness of the Plan administrator's decision is supported by Steffens' own statements prior to BlueCross's counterclaim and confirmed by statements and events occurring subsequent thereto. For example, in his complaint, Steffens averred that he was "severely and permanently" injured in the accident. BlueCross then alleged in its cross-claim that it had paid $67,477.57 on behalf of Steffens for the treatment of

---

Here, the cross and counterclaims clearly demonstrate the administrator's interpretation, and Steffens' own statements support the reasonableness of the interpretation. The dissent attempts to argue that the cross and counterclaims are insufficient to show the administrator's interpretation. However, the case to which the dissent cites, *Marolt v. Alliant Techsystems, Inc.,* 146 F.3d 617 (8th Cir. 1998), provides no support for the dissent's position because *Marolt* is a benefits denial case. In *Marolt,* the plan participant was denied benefits she was told she could obtain by "bridging" her break in service, and thereby increase her benefits because her benefits would be calculated based on her first start date with the employer, not the start date following her break in service. Consequently, pursuant to 29 U.S.C. § 1133, a written decision denying benefits was statutorily required. In quoting *Marolt,* the dissent leaves out this dispositive difference. Dissent, ¶ 82. The entire quote from *Marolt,* of which the dissent quotes only a portion, reads: "We will not permit ERISA claimants denied the timely and specific explanation *to which the law entitles* them to be sandbagged by after-the-fact plan interpretations devised for purposes of litigation." *Marolt,* 146 F.3d at 620 (emphasis added) (citing 29 U.S.C. § 1133).

injuries suffered in the accident, and listed the surgery-related expenses in the attached "Medical Itemization Report." Steffens did not deny BlueCross's allegation in his reply to BlueCross's counterclaim.

¶ 60. In his responses to interrogatories, Steffens also stated that the surgery-related expenses arose out of the accident. When asked to describe the extent of his injuries from the accident, Steffens began, "I sustained a back injury that resulted in lumbosacral fusion surgery." Under oath, he averred that the accident resulted in permanent injuries and that his back surgeon would testify to this permanency. He further asserted that he was entitled to $130,712.19 in total medical expenses from the accident, of which BlueCross had paid $64,751.50. Not only did Steffens assert the surgery-necessitating injuries arose from the accident, he asked the other parties to admit as much in his requests for admissions.

¶ 61. Furthermore, Steffens represented to the court that the surgery-necessitating injuries arose from the accident. In his May 2008 scheduling conference statement, Steffens reiterated that he was seeking the cost of his surgery. Steffens also listed his surgeon, Dr. Johnson, as an expert witness, further indicating that he planned to present evidence at trial that the surgery-necessitating injuries arose out of the accident.[24]

¶ 62. These pre-settlement sworn statements and assertions undeniably show that, according to Steffens, the surgery-necessitating injuries arose out of the June

---

[24] As counsel for BlueCross pointed out at oral argument, there is no reason that Dr. Johnson, who performed the surgery, would be listed as a witness unless Steffens was going to link the accident to the surgery.

2005 accident.[25] As the circuit court observed, "it's clear here that we have the testimony of the very person himself linking [the accident] to those [surgery] expenses." If Steffens himself consistently averred that the surgery-necessitating injuries arose out of the accident, both before and after the Plan administrator determined that reimbursement was due, we do not see how the Plan administrator's determination can be arbitrary and capricious.

¶ 63. The $100,000 settlement with Dishno and AIG is additional evidence that it was not unreasonable for the Plan administrator to have concluded that the surgery-necessitating injuries arose from the accident. Had the surgery expenses not factored into the settlement, Steffens would not have received $100,000 to cover only $2,441.50 in medical expenses arising from the accident. Stated otherwise, if Steffens' injuries did not encompass the need for surgery, AIG and Dishno would not have agreed to pay Steffens $97,588.50 for pain and suffering caused by occipital headaches and other discomfort suffered by Steffens in the six months following the accident. Based on these figures, the circuit found that "[i]t just bears no credibility to say that this did not have some relatedness, that is, the surgery had some relatedness to this settlement."

---

[25] The dissent quotes this sentence in an attempt to imply that we are somehow substituting Steffens' pre-settlement sworn statements and assertions for the Plan administrator's decision. Dissent, ¶ 84. A complete reading of the text surrounding this sentence, however, makes clear that we conclude that Steffens' sworn statements and assertions support our conclusion that the administrator's decision was reasonable. As thoroughly explained above, our job is to evaluate the reasonableness of the administrator's decision.

¶ 64. Following his January 2009 settlement with Dishno and AIG for $100,000 (the AIG policy limits), Steffens did an about-face and claimed that the surgery did not arise out of the accident. Steffens contends he changed his position because of Dr. Monacci's independent evaluation. Dr. Monacci was the medical opinion witness that AIG had hired to defend against Steffens' claim.

¶ 65. Steffens became aware of Dr. Monacci's findings and conclusions on October 2, 2008. Steffens did not change his position with regard to the surgery expenses at that time. In his 2008 witness list, Steffens listed Dr. Johnson as a witness. It wasn't until February of 2009, a month after Steffens settled with AIG and Dishno, that he amended his interrogatory answers. Accordingly, the timeline of events seriously undermines Steffens' assertion about relying on Dr. Monacci, as the circuit court found that it did.

¶ 66. In sum, given Steffens' consistent averments prior to settlement that the surgery-necessitating injuries arose out of the accident, we cannot say that the Plan administrator's determination that the surgery-necessitating injuries arose out of the accident was arbitrary and capricious. Stated another way, because Steffens himself averred both before and after BlueCross's counterclaim for reimbursement under the Plan that the surgery-necessitating injuries arose out of the accident, it is reasonable for the Plan administrator to have reached the same conclusion. *See Ruiz,* 400 F.3d at 991.

¶ 67. Because our above discussion is dispositive of the overriding question presented, whether BlueCross is entitled to reimbursement, we do not address the judicial estoppel argument presented to us. *See Gross v. Hoffman,* 227 Wis. 296, 300, 277 N.W. 663 (1938) (only

548

dispositive issues need be addressed). Accordingly, we reverse the decision of the court of appeals.

## III. CONCLUSION

¶ 68. We conclude that the Plan administrator's determination that BlueCross is entitled to reimbursement was not arbitrary and capricious. The Plan states that BlueCross is entitled to reimbursement from the beneficiary of the Plan for "expenses incurred as the result of, or that arose out of, an accident" when a third party "may be liable" for the payment of those expenses and the beneficiary obtains a settlement from the third party. The Plan gives the Plan administrator discretion to interpret the clause.

¶ 69. Prior to settlement, Steffens consistently asserted that the surgery-necessitating injuries arose out of a June 2005 automobile accident. Consequently, it was not arbitrary and capricious for the Plan administrator to interpret the Plan and conclude that Blue-Cross is entitled to reimbursement because the expenses that BlueCross paid arose from an accident for which a third party may be liable.

¶ 70. Our conclusion that the Plan administrator's determination that BlueCross is entitled to reimbursement is not arbitrary and capricious is dispositive of the case. We, therefore, do not reach the judicial estoppel issue.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 71. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). The majority opinion correctly states the law but then fails to apply it. I therefore dissent.

¶ 72. I agree with the court of appeals (although my reasoning differs from that of the court of appeals)

549

that BlueCross BlueShield is not entitled to a judgment as a matter of law and that the cause should be remanded to the circuit court.

¶ 73. The applicable law is clear: When an ERISA plan expressly gives the plan administrator discretion to interpret the terms of the plan, as the Plan at issue here does, a reviewing court will review the administrator's exercise of discretion under an "arbitrary and capricious" standard. Majority op., ¶¶ 34, 50, 54. Judicial review of the plan administrator's decision is limited "to the record available to the plan administrator at the time the decision was made." Majority op., ¶¶ 35, 51.

¶ 74. I have carefully read the majority opinion to find the plan administrator's interpretation of the Plan and the administrator's exercise of discretion. I can't find them. The majority opinion assumes the plan administrator interpreted the Plan but does not tell us who the plan administrator is, when the administrator made a decision about subrogation, or how and why the plan administrator made the decision about subrogation. *See, e.g.,* majority op., ¶¶ 55, 57.

¶ 75. I carefully searched the record to no avail to discover who the plan administrator is. A complete copy of the Plan is not in the record. The parties' briefs inform us that BlueCross BlueShield is a third-party administrator of the Plan, at least in regards to the payment of health benefits.

¶ 76. As third-party administrator of the health benefits of the Plan, BlueCross BlueShield was required to make the medical payments at issue regardless of whether the injuries were caused by an accident for which some other person is liable. The payment of medical expenses does not tell us who had discretion to

550

interpret the Plan; the payment does not illuminate the interpretation and determination regarding subrogation.

¶ 77. The first mention of subrogation was in Steffens' complaint. The complaint alleged that Blue-Cross BlueShield is joined as a party because of possible subrogation rights and to comply with Wis. Stat. § 803.03. The complaint further demanded judgment against BlueCross BlueShield "foreclosing any claim they may have for subrogation or other right to reimbursement they may have."

¶ 78. The insurance company's pleading demanded subrogation, and an affidavit by the insurance company's counsel is in the record. The affidavit reveals nothing about the plan administrator or the plan administrator's decision.

¶ 79. I searched the record to find the answers to many questions: When did the plan administrator interpret the Plan? What was that interpretation? What decision was made? On what facts was decision based? And what was the plan administrator's reasoning in reaching the decision? I can't find answers in the record to any of these questions.

¶ 80. No copy of the plan administrator's decision is in the record.[1] No affidavit of the plan administrator

---

[1] I acknowledge that plan claimants are statutorily entitled to a timely and specific explanation of a claim denial and that a similar statutory requirement is not specifically provided for a plan administrator to interpret the plan language and invoke the subrogation rights of the Plan. I conclude, however, that the underlying arguments are as pertinent to the present situation as they are in the benefits claim situation. In both instances, a timely and specific explanation allows the plan beneficiary to respond to the plan administrator's interpretation and allows a court to do its review.

is in the record. Nevertheless, the majority opinion declares that it is evaluating the plan administrator's decision on the basis of the information the administrator had when it made its decision.

¶ 81. A court cannot evaluate an interpretation and decision of a plan administrator and determine whether that decision is arbitrary and capricious without knowing what the interpretation and decision is, and on what it is based.[2]

¶ 82. It seems that the majority is relying on the counterclaim and cross-claim of BlueCross BlueShield in the present litigation as the plan administrator's determination and interpretation of the Plan language. *See* majority op., ¶ 57. BlueCross BlueShield does not allege in its pleadings that it is the plan administrator. The allegations do not include an interpretation of the Plan. Is the majority allowing a claimant to "be sandbagged by after-the-fact plan interpretations devised for purposes of litigation[?]"[3]

¶ 83. In that counterclaim, BlueCross BlueShield alleges:

> Pursuant to the terms of the plan in question as reflected in the reimbursement provision, plaintiff John R. Steffens, is obligated to reimburse [BlueCross BlueShield] in an amount equal to the amounts paid by [it], out of any recovery by the plaintiff in this action, whether by settlement, judgment or otherwise.

---

[2] In the review of a denial of benefits claim, a court is free to "ignore ERISA plan interpretations that did not actually furnish the basis for a plan administrator's benefits decision." *Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617, 620 (8th Cir. 1998).

[3] *Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617, 620 (8th Cir. 1998).

¶ 84. This allegation was made when the plaintiff was asserting in the litigation that the back injury (and the subsequent costs of the back surgery) was caused by the negligence of the tortfeasor. BlueCross BlueShield's allegation seems to rely on that assertion. The majority also seems to rely on the plaintiff's original assertion that the back injury was caused by the accident to support its reasonableness determination. Majority op., ¶ 59. According to the majority opinion, the plaintiff's original pleadings and assertions in the early stages of this litigation present compelling facts that seem to "undeniably show that, according to Steffens, the surgery-necessitating injuries arose out of the June 2005 accident." Majority op., ¶ 62. Steffens is not the plan administrator.

¶ 85. Even if the plan administrator's "decision" relied solely upon the plaintiff's allegations, then when the plaintiff no longer was asserting that the back injury arose out of the negligent acts of the tortfeasor, did the plan administrator update its determination? Perhaps the majority is relying on BlueCross BlueShield's motion for declaratory judgment as the plan administrator's decision subsequent to the plaintiff's changed assertions regarding the cause of the lower back injury that necessitated the surgery. If so, what was the basis for its updated determination? The majority doesn't say and scouring the record doesn't produce an answer.

¶ 86. On the record in the present case, neither the majority nor I can review the plan administrator's decision to determine whether it is arbitrary and capricious, and we cannot limit our review "to the record available to the plan administrator at the time the decision was made." Majority op., ¶¶ 35, 51.

¶ 87. I dissent because nothing in the record articulates the plan administrator's interpretation or

application of the Plan's subrogation language. There is no analysis or reasoning of the plan administrator to which the court may defer under the arbitrary and capricious standard.

¶ 88. Accordingly, I would remand the matter to the circuit court for the determination of what (if any) interpretation and determination the plan administrator (whoever that is) made, when, and why. If the plan administrator did not interpret the Plan or make a determination, then the circuit court must, as a matter of law, interpret and apply the Plan language as it would any other contract.[4]

¶ 89. For the reasons set forth, I dissent.

¶ 90. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

[4] "Where a trustee fails to act or to exercise his or her discretion, de novo review is appropriate because the trustee has forfeited the privilege to apply his or her discretion; it is the trustee's analysis, not his or her right to use discretion or a mere arbitrary denial, to which a court should defer." *Gritzer v. CBS, Inc.*, 275 F.3d 291, 296 (3rd Cir. 2002).